Robert Earl CALLOWAY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 18, 1977.

Rehearing Denied June 10, 1977.

Jack Emory Farley, Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Raymond M. Larson, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Calloway was convicted of kidnapping, KRS 509.040, and sentenced to 20 years' imprisonment. We affirm.

The facts are not disputed. Calloway, his brother Charlie, and a Wayne Lanham, after a session of "sniffing glue," went to a mall in Owensboro for the specific purpose of "robbing a girl." There they seized the victim in the mall parking lot, forced her into her automobile, and, with Calloway driving, proceeded across the bridge from Owensboro to Indiana. The automobile was parked near the bridge in Indiana, and the three men took turns raping the victim. Afterwards, while still in Indiana, $30 was taken from the victim, of which Calloway, kept $20 for himself and his brother and gave $10 to Lanham. After the rape and robbery, Calloway drove them back across the bridge into Kentucky and pulled into a cemetery where the automobile became stuck in the mud. Calloway and the other two men left the victim in her car and went on their separate ways.

The victim identified the three men. She, Calloway's brother and Lanham (both of whom confessed) testified at the trial in detail about the entire episode. Calloway's *confession* was read to the jury.

The principal assertion of error is the failure of the trial court to submit an instruction to the jury on the *exemption* to the kidnapping statute, KRS 509.050. Calloway argues that his only defense to the crime charged was that his *actions* fell within the exemption statute.

KRS 509.040, Kidnapping, provides:

"(1) A person is guilty of kidnapping when he unlawfully restrains another person when his intent is:

(a) To hold him for ransom or reward; or

(b) To accomplish or to advance the commission of a felony; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of a governmental or political function; or

(e) To use him as a shield or hostage.

(2) Kidnapping is a capital offense unless the defendant voluntarily releases the victim alive, substantially unharmed, and in a safe place prior to trial, in which case it is a Class B felony."

The trial court instructed under (b), to accomplish the commission of the crime of rape and/or robbery.

KRS 509.050, Exemptions, provides:

"A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter *and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose.* The exemption provided by this section is not applicable to a charge of kidnapping that arises from an interference with another's liberty that occurs incidental to the commission of a criminal escape." (Emphasis ours)

Calloway submitted an instruction on the exemption. The thrust of his argument is whether the interference with the victim's liberty occurs immediately with and incidental to another offense or whether the interference exceeds that which is ordinarily incident to the commission of the other offense and is a question for the jury.

■ The trial court properly declined to give the instruction. We are of the opinion

the application of KRS 509.050 is to be determined by the trial court and not by a jury in the absence of standards by which a jury could make such a determination.

The larger question presented by Calloway's argument that his actions fall within KRS 509.050 is whether the exemption statute has any application at all in the circumstances presented here. We are of the opinion that it does not.

■ The purpose of KRS 509.050 and the legislative intent is supplied in the commentary to the statute:

"The necessity for this provision arises out of the fact that many of the crimes defined in this code have as an essential element, or as an incidental element, a restriction of another's liberty. For example, offenses of robbery and forcible rape are defined in such a way as to always involve physical restraint. Other offenses may involve a restriction of someone's liberty because of the manner in which they are committed. *Because of this fact, a prosecutor could misuse the kidnapping statute to secure greater punitive sanctions for rape, robbery and other offenses than are otherwise available.* (Emphasis ours)

■ The logical extension of Calloway's argument approaches fantasy. What he is saying here is the unlawful restraint of the victim in Kentucky is wiped out by the fact that he raped and robbed the victim in Indiana and that by virtue of the exemption statute he should be free from any prosecution in this jurisdiction.

Accepting this reasoning would result in an absurd interpretation of the exemption statute. We do not believe the legislature intended the statute to be construed so as to reach an absurd result.

The commentary clearly explains the intention of the legislature. The statute is to act as a restraint on *abusive prosecution by Kentucky authorities* in charging kidnapping or degrees of unlawful imprisonment in addition to charges of rape, robbery, etc., all of which occur in Kentucky.

Here, Kentucky authorities did not charge kidnapping to secure greater punitive sanctions for the rape and robbery. Here, the charge of kidnapping to accomplish or to advance the commission of a felony was to charge the only offense committed in this jurisdiction.

■ We hold that KRS 509.050 is applicable only to the charge of kidnapping or degrees of unlawful imprisonment made in conjunction with other charged offenses committed in this jurisdiction. In those situations, it is the duty of the trial court to determine whether such charge constitutes an abuse of the kidnapping and unlawful imprisonment statutes according to the circumstances presented in each case.

■ Had this entire episode occurred in Kentucky, the trial court would then have had to make a determination of the application of KRS 509.050. The practicality of the situation in our view is that ordinarily the authorities would be satisfied with charges of rape and robbery and not be disposed to pile on additional charges unless the circumstances were unusual.

Should Calloway be charged with rape and robbery in Indiana, we do not consider that to be an "abuse of prosecution" by Kentucky authorities. In that event, he will be tried in accordance with the laws of the state of Indiana, not Kentucky.

■ The other contention by Calloway that improper remarks by the trial court to the entire jury panel denied him a fair trial could be argued more appropriately in a close case. Here Calloway's argument goes to the law of the case, not the facts. We are of the opinion that he does not show prejudice to the extent of denying him a fair trial.

KRS 500.030 provides, "All provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law."

We are of the opinion we have construed KRS 509.050 in accord with this section of the Penal Code.

The judgment is affirmed.

CLAYTON, JONES, STEPHENSON and STERNBERG, JJ., concur.

LUKOWSKY, J., and REED, C. J., concur in result only.

PALMORE, J., dissents.

PALMORE, Justice, dissenting.

In construing KRS 509.050, the exemption statute, the majority opinion emphasizes that portion of the Commentary in which it is said that "a prosecutor could misuse the kidnapping statute to secure greater punitive sanctions for rape, robbery and other offenses than are otherwise available" and draws from it the conclusion that the purpose of the statute is "to act as a restraint on *abusive prosecution by Kentucky authorities* in charging kidnapping or degrees of unlawful imprisonment in addition to charges of rape, robbery, etc., all of which occur in Kentucky."

After mentioning the possibility of abuse, the Commentary goes on to explain how the Model Penal Code and certain other criminal codes (including the New York statute, which requires a detention of 12 hours) are directed toward that particular problem. Then it says in so many words that there is a different basis for the Kentucky statute, as follows:

"The approach reflected by KRS 509.050 is unlike all of the above. The provision seeks to express a policy against the use of kidnapping to impose sanctions upon conduct which involves a movement or confinement (of another person) that has no criminological significance to *the evil toward which kidnapping is directed.* It then provides a flexible standard by which courts are to enforce that policy. Before criminal behavior that is directed toward the completion of robbery, rape, or some other offense can constitute kidnapping, there must be an interference with liberty in excess of that which ordinarily accompanies that offense." (Emphasis added.)

The foregoing excerpt merely re-emphasizes what is said in the concluding portion of Commentary appearing at the beginning of KRS Chapter 509:

"More specifically, kidnapping convictions are precluded for confinements which are directed toward the commission of robbery, rape or other crimes of violence and which do not exceed in length *and character* the type of confinement which ordinarily accompany such offenses." (Emphasis added.)

The point made by the Commentary (written by the drafter of the statute) is that physical detentions that are merely incidental to the commission of such crimes as rape and robbery are not the evil toward which kidnapping laws are directed. Presumably the laws against those particular crimes provide sufficient protection against them without the aid of kidnapping statutes.

In this case the detention existed for "about an hour, maybe a little more." Had the rape and robbery taken place on the other side of town, in Kentucky instead of Indiana, the assault and unlawful imprisonment offenses leading up to and culminating in the rape and robbery would have merged in them. Certainly the appellant could not have been convicted of both rape and kidnapping. That the crimes culminated in Indiana should not make any difference. Indiana has laws against rape and robbery and has courts and prosecutors capable of enforcing them. It is my opinion that the defendants in this case should have been turned over to the Indiana authorities for prosecution there. Instead, I am afraid that KRS 509.050 has been misunderstood and subverted, and as a result we may witness a good many of the very abuses that the majority opinion indicates it was intended to prevent.

Another respect in which I come to a parting of ways with the majority opinion is in its treatment of the possible effect of a portion of the trial judge's remarks to the jury panel at the beginning of the term of court during which the appellant was tried. From my own personal acquaintance with the able and distinguished trial judge I am satisfied that if he had realized the similarities between the facts of this case and the example mentioned by him to the jury pan-

el, and that this case would be tried by 12 of the same jurors to whom he was speaking, he would have used a different example to illustrate his point. Nevertheless, here it is:

"I instruct you do not compromise your verdict, and here's what I mean by that. Suppose you're a member of a twelve-man jury and you go back there and you have some doubt about this man's guilt; but just to get along with the remaining eleven, you say, "Okay. I'll go along with the verdict of guilty, but I'm going to give the absolute minimum sentence." That's no way. That's a compromised verdict. Once you agree a verdict of guilty is your verdict, you set an appropriate punishment. An aggravated offense certainly warrants more punishment than one that is not aggravated. In the words of Gilbert and Sullivan, "Let the punishment fit the crime." I'll give you a little example, and I don't want to mention names. It would be embarrassing. A few months ago here we had a young man with a family—an attractive young man with a family charged with an offense—a sexual offense against an elderly lady. A bizarre type thing which nobody could believe that it could happen. Why? Why would that happen? He took her across the river. The serious offense took place in southern Indiana. We couldn't prosecute him for the most serious offense. All they could prosecute for was for detaining a woman against her will, which carried a punishment from two to seven years in the penitentiary. Now that jury of mostly young women went back there and they went in there and thought—I know in their minds they thought this is unbelievable. It's incredible and bizarre. I don't understand how a young man would do this with a seventy-two year old lady. So there's something awry here. The evidence was overwhelming I'll admit that, but I'm not going to give anything but the minimum sentence. Well, they did that—two years, and they might as well have hung a medal on him. Now that's about the most poignant example that I can think of in my two years on the bench of a compromised verdict, and I don't want you to do that. If your punishment should be too great under the law, I can reduce it. If it's too little, I could never increase it. I'm not saying go back there and give the maximum sentence in every case. Don't give the minimum sentence in every case. Give a sentence that fits the crime once you vote for a verdict of guilty."

In a motion for new trial filed some six weeks after the trial, counsel for the appellant stated "that after due diligence and subsequent to the trial of this matter and the filing of a Motion and Grounds for New Trial . . . and the Court's Order overruling said motion . . . counsel became aware" of the court's charge to the jury panel containing the passage quoted above. From this it is to be assumed that counsel was not present when the prospective jurors were addressed and had no reason to know what had been said in time to bring it up before the trial.

Appellant's contention that the foregoing charge to the jurors conduced to deny him a fair trial is sloughed off by the comment that it "could be argued more appropriately in a close case. Here Calloway's argument goes to the law of the case, not the facts." Such an answer begs the question. It misses the point that the jury had a choice with respect to the penalty, ranging from 10 to 20 years. This was the precise aspect of the jury's function toward which the trial judge's remarks had been directed. Presumably the jurors accepted the guidance offered by those remarks. They chose the maximum sentence of 20 years. That the appellant's main argument goes to the law of the case rather than the facts is simply irrelevant to the possible influence of the trial court's remarks upon the jury's choice of a penalty. I think he has a substantial due process claim.