Robert FRASER Appellant

v.

COMMONWEALTH OF KENTUCKY
Appellee

No. 1999–SC–0846–DG.

Supreme Court of Kentucky.

Sept. 27, 2001.

John Palombi, Misty Dugger, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Connie Vance Malone, Paul D. Gilbert, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant Robert Fraser pled guilty to murder and to two counts of tampering with physical evidence and was sentenced to life in prison. His subsequent motion for relief under RCr 11.42 was denied without an evidentiary hearing or appointment of counsel. The Court of Appeals affirmed and we granted discretionary review to address the following issues: (1) When is an evidentiary hearing required on an RCr 11.42 motion? (2) When is an indigent movant entitled to the appointment of counsel to assist him in pursuing an RCr 11.42 motion? and (3) Was Appellant entitled to an evidentiary hearing and to appointment of counsel in this case?

In June 1995, Appellant and his girl-friend, Arlene Hall Rowe, along with Rowe's brother, Gary Lee Young, were indicted for the murder and attempted disposal of the body of Rowe's ex-husband, Everett Lee Hall. The Commonwealth gave written notice that it would not seek the death penalty against any of the defendants. On the morning of trial, April 21, 1997, Appellant entered a plea of guilty to murder. In response to an inquiry by the trial judge during the *Boykin* hearing, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Appellant stated that he had not been promised any benefit in exchange for his plea. At the conclusion of the hearing, Appellant's plea was accepted and the Commonwealth made no recommendation with respect to a sentence. Final sentencing was deferred until May 16, 1997. The case then proceeded to trial on the charges against the other two defendants. Appellant was the Commonwealth's chief witness at trial. He testified that he killed Hall upon Rowe's solicitation and that all three defendants participated in an attempt to dispose of Hall's body. Rowe was convicted of complicity to murder and two counts of complicity to tampering with physical evidence and was sentenced to life in prison .[1]

At final sentencing on May 16, 1997, the Commonwealth again made no recommendation with respect to Appellant's sentence and he was sentenced to life in prison. On May 20, 1997, Appellant's attorney filed a motion to alter or amend the judgment requesting that the sentence be reduced to twenty years "[d]ue to the substantial assistance which Robert Fraser contributed to the Commonwealth's efforts in successfully convicting co-defendant Arlene Hall ...." The motion was set for hearing on

---

**1.** Some of the recited facts were obtained from our unpublished opinion in *Rowe v. Commonwealth,* 97–SC–0441–MR (1998) which affirmed Rowe's convictions and sentence.

June 27, 1997. The clerk's record does not contain a written ruling on the motion or include a videotape or transcript of any relevant hearing. We assume the motion was overruled. On May 19, 1998, Appellant, *pro se,* filed this RCr 11.42 motion, as well as a motion for an evidentiary hearing, a motion to proceed in forma pauperis with attached affidavit of indigency, and a motion for appointment of counsel to assist him at the evidentiary hearing.

## I. RCr 11.42 PROCEDURES ...

 The United States Constitution requires that indigent defendants be represented by counsel at trial, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and on a first appeal as a matter of right. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). There is no constitutional right to a post-conviction collateral attack on a criminal conviction or to be represented by counsel at such a proceeding where it exists. *Murray v. Giarratano,* 492 U.S. 1, 8, 109 S.Ct. 2765, 2769, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987). The Constitution of Kentucky provides for one appeal as a matter of right, Ky. Const. § 115, and contains no provision with respect to a post-conviction collateral attack except the prohibition in Section 16 against suspension of the writ of habeas corpus. Today, the vast majority of collateral attacks against criminal convictions are by motions filed pursuant to RCr 11.42.

The former Code of Practice in Criminal Cases, which governed criminal procedure in Kentucky from 1877 to 1963, contained no provision comparable to RCr 11.42. Section 276 of the Code merely provided that "[t]he only ground upon which a judgment shall be ´arrested is that the facts stated in the indictment do not constitute a public offense." Thus, until 1963, the only avenues of collateral attacks on final judgments of conviction were petitions for writs of habeas corpus or coram nobis. The inadequacies of these remedies for collateral attacks on final judgments of conviction are analyzed at length in a Kentucky Law Journal article by John S. Gillig, *Kentucky Post–Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42,* 83 Ky. L .J. 265, 295–330 (1994–95). To summarize, a writ of habeas corpus, the purpose of which was to provide swift resolution of claims of illegal confinement, had to be brought in the court having jurisdiction over the person of the petitioner, *i.e.,* where he was imprisoned, rather than where he had been tried and where likely witnesses would be found. This also created a problem of "comity" whereby one trial judge was asked to overturn the judgment of another trial judge. Initially, at least, the only remedy upon the grant of a writ of habeas corpus was to release the prisoner from confinement and return him to immediate freedom. Later, the concept of a "conditional writ" was recognized whereby the prisoner would remain confined until retrial. Finally, the error alleged in the habeas petition had to be evident from the trial record, a requirement that bound the reviewing court to the clerk's record and the transcript of proceedings at trial. *Id.* at 308–09. A writ of coram nobis was closely akin to our present CR 60.02 and was predicated on errors of fact, not law, which theoretically excluded constitutional arguments of law that now comprise the bulk of RCr 11 .42 claims. Further, the error had to be "hidden or unseen;" thus, common trial errors could not be raised. Some cases apparently required the petitioner to demonstrate what today would be termed "actual innocence." *Id.* at 330.

In 1958, the General Assembly established a committee to study and recom-

mend revisions to the Criminal Code, "including the transposition of general procedural rules from the Kentucky Revised Statutes to the Code and matters of substantive law from the Code to the Kentucky Revised Statutes." KRS 447.310(2) (1958 Ky. Acts, ch. 45, § 1; repealed 1968 Ky. Acts, ch. 152, § 168). In 1962, the General Assembly accepted the recommendations of the committee and enacted the present Rules of Criminal Procedure. 1962 Ky. Acts, ch. 234, at 788–827 (eff. January 1, 1963). In doing so, it "declared [it] to be the policy of the General Assembly, insofar as the Legislative Department is empowered to express policy on matters of judicial procedure, that prescription of rules governing details of procedure will be left to the discretion of the Judicial Department after the effective date of this Act." *Id.* at 788–90 (Preamble). Thereafter, all amendments to the Rules of Criminal Procedure have been promulgated by this Court and its predecessor.

As originally enacted by the General Assembly, RCr 11.42 did not mention appointment of counsel. 1962 Ky. Acts, ch. 234, at 822. The Rule had been modeled on 28 U.S.C. § 2255, which, until 1996, contained no provision for the appointment of counsel.[2] Exercising the inherent rule-making power recognized in the Preamble to the 1962 enactment of the Criminal Rules, *supra,* our predecessor Court rejected the legislative version of RCr 11.42 and substituted a version that was more specific as to procedures and contained the same provision for appointment of counsel now found at RCr 11.42(5). The existing provisions of RCr 11.42 relevant to our present inquiry are as follows:

(2) The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion.

. . .

(5) . . . If the answer raises a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing and, if the movant is without counsel of record and if financially unable to employ counsel, shall upon specific written request by the movant appoint counsel to represent the movant in the proceeding, including appeal.

These provisions establish the following procedural steps with respect to an evidentiary hearing and the appointment of counsel:

■ 1. The trial judge shall examine the motion to see if it is properly signed and verified and whether it specifies grounds and supporting facts that, if true, would warrant relief. If not, the motion may be summarily dismissed. *Odewahn v. Ropke,* Ky., 385 S.W.2d 163, 164 (1964).

■ 2. After the answer is filed, the trial judge shall determine whether the allegations in the motion can be resolved on the face of the record, in which event an evidentiary hearing is not required. A hearing is required if there is a material issue of fact that cannot be conclusively resolved, *i.e.,* conclusively proved or disproved, by an examination of the record. *Stanford v. Commonwealth,* Ky., 854 S.W.2d 742, 743–44 (1993), *cert. denied,* 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994); *Lewis v. Commonwealth,* Ky., 411 S.W.2d 321, 322 (1967). The trial

---

**2.** In 1996, 28 U.S.C. § 2255 was amended to provide that "the court *may* appoint counsel .... " Pub.L. 104–132, § 105, 110 Stat. 1220 (1996) (emphasis added).

judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them. *Drake v. United States,* 439 F.2d 1319, 1320 (6th Cir. 1971).

■ 3. If an evidentiary hearing is required, counsel must be appointed to represent the movant if he/she is indigent and specifically requests such appointment in writing. *Coles v. Commonwealth,* Ky., 386 S.W.2d 465 (1965). If the movant does not request appointment of counsel, the trial judge has no duty to do so *sua sponte. Beecham v. Commonwealth,* Ky., 657 S.W.2d 234, 237 (1983).

■ 4. If an evidentiary hearing is not required, counsel need not be appointed, "because appointed counsel would [be] confined to the record." *Hemphill v. Commonwealth,* Ky., 448 S.W.2d 60, 63 (1969). (However, the rule does not preclude appointment of counsel at any stage of the proceedings if deemed appropriate by the trial judge.)

The wisdom of not *requiring* appointment of counsel if the allegations can be conclusively resolved by examination of the record is attested to by the number of frivolous or facially meritless motions filed under the rule, some of which have found their way into published opinions. *E.g., Glass v. Commonwealth,* Ky., 474 S.W.2d 400, 401 (1971) (movant claimed his plea was involuntary because it was motivated by a desire to avoid a possibly harsher penalty at the hands of a jury); *Adkins v. Commonwealth,* Ky., 471 S.W.2d 721, 722 (1971) and *Newberry v. Commonwealth,* Ky., 451 S.W.2d 670, 671 (1970) (movants claimed they were coerced to plead guilty, but the records in each case conclusively proved that, in fact, neither had pled guilty and both had been convicted by juries following jury trials). The sheer volume and relative futility of RCr 11.42 motions are apparent from statistics recited in Gil-

lig's Kentucky Law Journal article, *supra.* His survey of the 342 appellate opinions in RCr 11.42 cases *published* from 1963 to 1995 revealed that only five movants were granted new trials and only two obtained unconditional release from incarceration. In only 14% of the total cases did the movant obtain even minor relief, such as a remand for an evidentiary hearing. *Id.* at 342–43. His survey of all RCr 11.42 appellate opinions, published and unpublished, for the years 1990 and 1991 revealed that relief was denied in 294 of 321 cases. In only seven cases were the movants granted new trials. The remaining twenty reversals granted minor relief such as a remand for an evidentiary hearing. *Id.* at 344.

When RCr 11.42 was adopted in 1963, the representation of indigent criminal defendants in Kentucky and most other states was primarily provided on an involuntary, uncompensated basis. Typically, the presiding trial judge appointed the youngest members of the local bar to represent indigent defendants without compensation and under threat of contempt. *See generally,* B. Deatherage, Comment, *The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression,* 60 Ky. L.J. 710 (1971–72). The same procedure prevailed in federal jurisdictions until the enactment of the Criminal Justice Acts of 1964, 18 U.S.C. § 3006A. The primary justification advanced for this imposition was that *pro bono* representation of indigent defendants upon court order was a traditional professional obligation of the bar. *See United States v. Dillon,* 346 F.2d 633, 636–38 (Appendix) (9th Cir.1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966). Although our predecessor Court expressed concerns about the issue, it initially deferred to the legislature, because "[o]nly the legislature can provide suffi-

cient funds to finance such a project, and of course the legislature must necessarily create the system under which these funds could be properly disbursed." *Commonwealth, Dep't of Corrections v. Burke*, Ky., 426 S.W.2d 449, 451 (1968); *see also Jones v. Commonwealth*, Ky., 457 S.W.2d 627, 631–32 (1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971); *Warner v. Commonwealth*, Ky., 400 S.W.2d 209, 211–12 (1966), *cert. denied*, 385 U.S. 885, 87 S.Ct. 178, 17 L.Ed.2d 112 (1966).

In October 1971, the Franklin Circuit Court ordered the Commissioner of Finance to pay fees awarded to court-appointed criminal defense attorneys by trial judges in Campbell and Jefferson Counties. On appeal, our predecessor Court held that the existing system of court-appointed uncompensated counsel was unconstitutional. *Bradshaw v. Ball*, Ky., 487 S.W.2d 294, 299 (1972). In so doing, the Court also observed:

In the context presented, we are persuaded that it is the duty of the executive department to enforce the criminal laws, and it is the duty of the legislative department to appropriate sufficient funds to enforce the laws which they have enacted. The proper duty of the judiciary, in the constitutionally ideal sense, is neither to enforce laws nor appropriate money. The judiciary's reason for existence is to *adjudicate*.

*Id.* (emphasis in original).

Meanwhile, during the pendency of the appeal in *Bradshaw v. Ball*, the 1972 General Assembly enacted KRS Chapter 31, establishing and funding the Department of Public Advocacy ("DPA") for the purpose of providing legal counsel for indigent criminal defendants. Of specific relevance to this case is KRS 31.110(2)(c):

(2) A needy person who is entitled to be represented by an attorney under subsection (1) is entitled:

. . .

(c) To be represented in any other post-conviction proceeding that the attorney and the needy person considers (sic) appropriate. However, if the counsel appointed in such post-conviction remedy, with the court involved, determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense, there shall be no further right to be represented by counsel under the provisions of this chapter.

The last sentence in subsection (c) appears to require a procedure akin to that described in *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967) and adopted in Kentucky by *Fite v. Commonwealth*, Ky., 469 S.W.2d 357, 358 (1971) with respect to criminal appeals.[3] *See, e.g., Robbins v. Commonwealth*, Ky.App., 719 S.W.2d 742 (1986).

In *Commonwealth v. Ivey*, Ky., 599 S.W.2d 456 (1980), we interpreted KRS 31.110(2)(c) to require the appointment of counsel in an RCr 11.42 proceeding "upon request" of an indigent movant, *id.* at 457, regardless of the stage of the proceedings, because successive motions are barred by RCr 11.42(3), *Butler v. Commonwealth*, Ky., 473 S.W.2d 108, 109 (1971), and "[w]ithout the assistance of counsel Ivey could be effectively precluded from raising valid grounds by failure to include such grounds at the time of his first motion."

3. In *Smith v. Robbins*, 528 U.S. 259, 272–76, 120 S.Ct. 746, 757–59, 145 L.Ed.2d 756 (2000), the United States Supreme Court held that *Anders* is not obligatory on the states and that states are free to adopt alternative procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel.

*Ivey, supra,* at 458 [4]. A literal reading of *Ivey* and KRS 31.110(2)(c) would require appointment of counsel upon request to assist a prospective RCr 11.42 movant in researching, preparing and filing the initial motion; and, if counsel determines that there are no meritorious grounds for such a motion, to submit an *Anders* brief to the trial judge explaining why the motion was not filed. However, in *Gilliam v. Commonwealth,* Ky., 652 S.W.2d 856 (1983), we held that *Ivey* did not purport to expand either the purpose of RCr 11.42 or the scope of its relief. *Id.* at 858. *Gilliam* also held that a prospective indigent movant was not even entitled to a free transcript of his trial to assist in preparing an RCr 11.42 motion, *id.* at 859, despite the fact that KRS 31.110(1)(b) provides that "[a] needy person ... being detained under a conviction ... is entitled ... [t]o be provided with the necessary services and facilities of representation *including investigation and other preparation.*" (Emphasis added.) *Gilliam* clearly represented a retreat from the broad language in *Ivey* that KRS 31.110 requires appointment of counsel and the provision of services "upon request."

In *Commonwealth v. Stamps,* Ky., 672 S.W.2d 336 (1984), the trial judge denied motions for an evidentiary hearing and appointment of counsel, and overruled the RCr 11.42 motion solely on the basis of legal precedent. The Court of Appeals affirmed the denial on the merits, but, citing *Ivey,* reversed for appointment of counsel to "permit appellant to present for adjudication any supplementary grounds that might reasonably appear for RCr 11.42 relief." *Id.* at 337. On discretionary review, we agreed that, on the face of the record, an evidentiary hearing was not required and held that the failure to appoint counsel was "harmless error." *Id.* at 337–38. *Stamps* also noted that although *Ivey* had construed KRS 31.110 as providing broader relief than RCr 11.42(5), "our rule of construction when dealing *with a procedural matter mandated by statute for a criminal case* is that 'We do not believe the legislature intend(s) the statute to be construed so as to reach an absurd result.'" *Id.* at 339 (emphasis added) (citing *Calloway v. Commonwealth,* Ky., 550 S.W.2d 501, 503 (1977)).

 As observed in *Bradshaw v. Ball, supra,* it is the function of the legislature to enact substantive criminal laws and to appropriate sufficient funds to enforce them; it is the function of the judiciary to adjudicate. Like the right to trial by jury and the right of confrontation, the constitutional right to counsel is a matter of procedural due process, *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), not substantive criminal law. The responsibility for determining when and whether counsel must be appointed for a criminal defendant in Kentucky is a func-

---

**4.** Contrary to the assertion made in Justice Keller's separate opinion, *ante* at 459, *Ivey* did not interpret KRS 31.110 as requiring appointment of counsel "for the purpose of supplementing an RCr 11.42 petition," but as requiring appointment "on request." *Ivey,* at 457. Nothing in *Ivey* suggests that the motion for counsel therein was for the purpose of assisting in preparing a supplemental pleading, and Fraser is not requesting such assistance in the motion, *sub judice.* Justice Keller's citation to *Nichols v. United States,* 511 U.S. 738, 748, 114 S.Ct. 1921, 1928, 128

L.Ed.2d 745 (1994) is also inapposite. The holding in *Nichols* was that an uncounseled misdemeanor conviction, valid under *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), because no prison term was imposed, may be used to enhance punishment at a subsequent conviction. *Id.* at 748–49, 114 S.Ct. at 1928. Footnote 12 to that opinion primarily relied on by Justice Keller, *ante* at 463, n. 19, only holds that states may decide whether counsel should be provided for indigent defendants charged with misdemeanors.

tion of the judicial department, not the legislature. Ky. Const. § 116; *see* RCr 3.05(2). To its credit, the General Assembly has created and funded the DPA, and nothing except legislative parameters precludes that office from providing legal services to indigent defendants or movants even when not constitutionally required. We conclude, therefore, that RCr 11.42(5) establishes when a judge *must* appoint counsel for an indigent movant and that KRS 31.110(2)(c) establishes when the DPA *may* provide legal services even without judicial appointment.[5] To the extent that *Commonwealth v. Ivey, supra,* holds that KRS 31.110(2)(c) establishes when a judge must appoint counsel for an indigent movant, it is overruled. Since the statute is broader than the rule, we can conceive of no situation where the judge would appoint counsel for an indigent RCr 11.42 movant who would be statutorily ineligible for representation by the DPA.

## II.... AS APPLIED TO THIS CASE.

Appellant's RCr 11.42 motion alleged ineffective assistance of counsel in two respects: (1) failure to pursue Appellant's mental incompetency defense; and (2) failure to prepare for trial. The motion alleges that counsel told Appellant on the morning of trial that he was unprepared for trial, that he would be reduced to trying the case "by the seat of his pants," and that if Appellant did not plead guilty he would be convicted and sentenced to life in prison. The motion also alleged that Appellant's guilty plea was involuntary because it was induced by counsel's representation that the Commonwealth's attorney had agreed to a plea bargain by which Appellant would be sentenced to only

twenty years in lieu of the maximum sentence of life in prison. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Valenciano,* 495 F.2d 585 (3d Cir.1974); *Roberts v. United States,* 486 F.2d 980 (5th Cir.1973).

The trial judge overruled the motion without an evidentiary hearing and without appointing counsel, finding that (1) the allegation of ineffective assistance of counsel was insufficiently specific to warrant a hearing; and (2) the allegation that the guilty plea was involuntary was belied by the absence from the record of a written plea agreement and by Appellant's own denial at the *Boykin* hearing. The Court of Appeals affirmed, also noting that there was nothing in the record to support Appellant's claim of a secret plea agreement. Thus, both the trial court and the Court of Appeals erroneously held that Appellant's motion should be dismissed because the record did not *prove* the allegations in his motion, not because the record *conclusively disproved* those allegations. In his motion for discretionary review, Appellant, still *pro se,* asserted that the reason for the silent record was that his consideration for the plea agreement was (1) he would testify against his codefendants and (2) he would keep the plea agreement secret so that it could not be used to impeach the credibility of his testimony at trial. He also noted compellingly that absent a plea agreement he would have had no motivation to testify against his girlfriend at trial. We granted discretionary review and appointed counsel to represent Appellant before this Court.

 The two-pronged test for ineffective assistance of counsel is (1) whether

---

5. Contrary to Justice Keller's suggestion, *ante* at 464, *Pillersdorf v. Dept. of Public Advocacy,* Ky., 890 S.W.2d 616 (1994) does not hold otherwise. *Pillersdorf* only holds that once the DPA has been appointed to represent an

indigent defendant, a trial judge "for good cause" can order substitute counsel, but absent a finding of "good cause," the trial judge cannot order the DPA to pay the substitute counsel's fee.

counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) whether the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Gall v. Commonwealth,* Ky., 702 S.W.2d 37, 39 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). Appellant's allegation that his attorney told him to plead guilty because he (the attorney) was unprepared for trial was sufficiently specific to warrant a hearing on whether the attorney was functioning as "counsel" guaranteed by the Sixth Amendment. The fact that Appellant received the maximum sentence for the offense to which he pled guilty satisfies the requirement of prejudice. Compare *Lawson v. Commonwealth,* Ky., 386 S.W.2d 734 (1965), *cert. denied,* 381 U.S. 946, 85 S.Ct. 1789, 14 L.Ed.2d 709 (1965):

> The record shows, however, that appellant entered a plea of guilty to the rape charge; he received [a] sentence of imprisonment for ten years, the minimum sentence permitted under KRS 435.090. Appellant does not assert that counsel badgered him into entering a guilty plea, nor does he claim that he failed to understand the consequences of his guilty plea.

*Id.* at 735. Here, Appellant not only received the maximum sentence, he asserts that counsel told him he was unprepared to try his case and represented to him that the consequence of his guilty plea would be the imposition of the minimum sentence.

■ As stated, the trial judge denied Appellant an evidentiary hearing with respect to the voluntariness of his guilty plea because of the absence from the record of a written plea agreement and Appellant's statements at the *Boykin* hearing. However, the absence from the record of a written plea agreement does not "conclu-

sively resolve" that a plea agreement was not, in fact, reached. Oral plea agreements are not uncommon. *E.g., United States v. Strayhorn,* 250 F.3d 462, 464 (6th Cir.2001); *United States v. Saucedo,* 226 F.3d 782, 786 (6th Cir.2000). And the very nature of the alleged agreement described by Appellant explains why it was not reduced to writing and filed of record.

We have held under the facts of particular cases that admissions made during a *Boykin* hearing can conclusively resolve a claim that a plea was involuntarily obtained. *E.g., Beecham v. Commonwealth, supra,* at 237; *Glass v. Commonwealth, supra,* at 401. However, part of this alleged agreement supposedly required Appellant to deny its existence. Proof of even a secret agreement has been held foreclosed on the basis of statements made during a *Boykin* hearing "absent extraordinary circumstances, *or some explanation* of why defendant did not reveal other terms." *Baker v. United States,* 781 F.2d 85, 90 (6th Cir.1986) (emphasis added), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). Nevertheless, while the representations of a defendant, his attorney, and the prosecutor at a *Boykin* hearing, as well as any findings by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings," *Blackledge v. Allison, supra,* 431 U.S. at 74, 97 S.Ct. at 1629, that barrier is not insurmountable if there is proof that the representations "were so much the product of such factors as misunderstanding, duress, *or misrepresentation by others* as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Id.* at 74–75, 97 S.Ct. at 1629–30 (emphasis added). Here, Appellant explains that his representations at the *Boykin* hearing were the product of his oral plea agreement. If so, the issue of whether there was, in fact, an agreement could not be "conclusively resolved" on the

face of the record of the *Boykin* hearing. An evidentiary hearing on Appellant's RCr 11.42 motion is required.

■■■ The Commonwealth argues in its brief that "Appellant should not be permitted to lie on the record, induce the court to make decisions based on that deception and then subsequently seek to benefit from that deception." The argument ignores the fact that if Appellant is now telling the truth, the Commonwealth was not only a party to the deception, but the instigator of it, and, to date, its only beneficiary. On the other hand, Appellant allegedly performed his part of the agreement and got nothing in return. He could not have fared worse if he had gone to trial represented by an unprepared attorney. In that event, however, the Commonwealth would have been required to try its case against Rowe and Young without the cooperation and assistance of its key witness. We do not condone, indeed we condemn, any plea agreement designed to conceal the true nature of a facially unconditional guilty plea for the purpose of denying due process of law to another criminal defendant. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Williams v. Commonwealth,* Ky., 569 S.W.2d 139, 143–45 (1978). Nevertheless, if the Commonwealth entered into such an agreement and accepted the benefits thereof, it is now estopped to assert that Appellant is not entitled to his quid pro quo.

The question is not whether the Commonwealth's bargain was wise or foolish. The question is whether the Commonwealth should be permitted to break its word.

. . .

If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy.

*Workman v. Commonwealth,* Ky., 580 S.W.2d 206, 207 (1979), *overruled on other grounds, Morton v. Commonwealth,* Ky., 817 S.W.2d 218 (1991). *See also Matheny v. Commonwealth,* Ky., 37 S.W.3d 756, 758 (2001); *Commonwealth v. Reyes,* Ky., 764 S.W.2d 62, 68 (1989).

Accordingly, the opinion of the Court of Appeals is reversed and this case is remanded to the Pike Circuit Court with directions to hold an evidentiary hearing on the issues of ineffective assistance of counsel and the voluntariness of Appellant's guilty plea, to appoint counsel to represent Appellant at that hearing, and to resolve the issues raised in Appellant's motion pursuant to RCr 11.42(6) and the contents of this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur as to Part I.

KELLER, J., dissents as to Part I by separate opinion, in which STUMBO, J., joins.

LAMBERT, C.J.; GRAVES and JOHNSTONE, JJ., concur as to Part II.

KELLER, J., concurs as to Part II by separate opinion, in which STUMBO, J., joins.

WINTERSHEIMER, J., dissents as to Part II without separate opinion.

KELLER, Justice, Concurring in Part and Dissenting in Part.

I agree with much of Section II of the majority opinion and would remand this matter for the trial court to appoint counsel for Appellant and to conduct an evidentiary hearing in Appellant's underlying

RCr 11.42 action. I write separately, however, because I adamantly disagree with the majority's Section I conclusion regarding a needy person's right to appointed counsel in RCr 11.42 proceedings. Accordingly, I would modify the majority's Section II holding and, in addition to remanding the case for an evidentiary hearing on the matters discussed in the majority opinion, I would allow appointed counsel to supplement Appellant's previous RCr 11.42 petition and raise any additional grounds for relief.

Over two (2) decades ago, in *Commonwealth v. Ivey*,[1] this Court unanimously held that, through its adoption of KRS 31.110, the General Assembly has required the appointment of counsel for an indigent movant, upon his or her request, for the purpose of supplementing an RCr 11.42 petition. Today's majority overrules *Commonwealth v. Ivey* without even addressing the primary rationale behind its holding, and bases its conclusion upon a flawed separation of powers analysis neither briefed nor argued before the Court. I find it perplexing that, after explicitly referencing—and ridiculing—the inadequacy of many pro se RCr 11.42 pleadings, the majority ignores the General Assembly's clear intent "to provide meaningful, rather than nominal, protection to the rights of the indigent,"[2] and nullifies the "statutory right to counsel [which] allows for resolution of all legitimate claims in the first motion and provides no inequity between the needy and rich."[3]

The *Ivey* Court recognized that KRS 31.110(2)(c) gives needy persons a statutory right to appointed counsel in post-conviction proceedings and observed the ap-propriateness of this right in light of RCr 11.42(3)'s procedural default rules:

The primary question presented is whether the public advocacy statutes require the appointment of counsel upon request of a "needy person" to represent him in RCr 11.42 proceedings. We hold that the legislature has so provided.

Ivey presented the principal issue in this case by way of a CR 60.02 motion to set aside or to amend the order in the RCr 11.42 proceeding on the ground that the circuit court had improperly refused to appoint counsel for Ivey when so requested pursuant to KRS 31.110. The circuit court had ruled it was unnecessary to appoint counsel for Ivey pursuant to RCr 11.42(5) because the pleadings did not raise a material issue of fact. However, the CR 60 .02 motion and supporting memorandum raised the question of statutory requirement to provide counsel for needy persons in post-conviction proceedings upon request. To deny counsel to such a person was error.

. . .

The provision for appointment of counsel found in RCr 11.42(5) was intended to set the minimum standard for post conviction relief proceedings. *The legislature could and did provide for a more generous policy of appointing counsel for indigents*, an action which is entirely consistent with its control of the purse strings of the Commonwealth.

RCr 11.42(3) provides: "The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the mo-

---

1. Ky., 599 S.W.2d 456 (1980).

2. *West v. Commonwealth*, Ky., 887 S.W.2d 338, 341 (1994).

3. Ed Monahan & Rebecca DiLoreto, "The Scope of the Right to Counsel in Kentucky Post–Conviction Proceedings," *The Advocate*, v. 22, no. 4, 34–37 at 37 (July, 2000) (hereafter, "Monahan & DiLoreto").

tion shall conclude all issues that could reasonably have been presented in the same proceedings." This rule has been consistently interpreted to bar successive motions under 11 .42. *Without the assistance of counsel Ivey could be effectively precluded from raising valid grounds by failure · to include such grounds at the time of his first motion. This inequity between the needy and the affluent is cured by the statute.*

It is our opinion that KRS 31.110 and RCR 11.42 are complementary and clearly provide for appointment of counsel in the situation presented here.[4]

Contrary to the majority's allegation that this Court has retreated from the *Ivey* holding, both this Court and the Court of Appeals have applied the *Ivey* holding[5] and found error when trial courts have failed to appoint counsel in accordance with its holding.[6] Although today's majority deploys out-of-context language from *Commonwealth v. Stamps* to suggest that the *Stamps* Court questioned the *Ivey* Court's interpretation of KRS 31.110, the quoted language refers to the Appellant's

contention that the trial court's failure to appoint counsel constituted automatic reversible error,[7] and the *Stamps* Court *actually found error*, but believed it harmless under the facts of that case.[8]

While this Court has not interpreted *Ivey* to require reversal whenever the trial court fails to appoint counsel (a conclusion which might warrant another look), we have never—until today, anyway—questioned the *Ivey* Court's conclusion that KRS 31.110 grants needy persons a statutory right to appointed counsel in post-conviction proceedings. I believe we have done so largely because no other interpretation is even remotely defensible because the statute contains no ambiguity—KRS 31.110 unequivocally creates a right to appointed counsel in post-conviction matters:

> (1) *A needy person who* is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or *is being detained under a conviction of a serious crime, is entitled:*

4. *Commonwealth v. Ivey, supra* note 1 at 457–8 (citations omitted and emphasis added).

5. *See Gilliam v. Commonwealth*, Ky., 652 S.W.2d 856, 858 (1983) ("*Ivey* defines the right to appointment of counsel in post-conviction RCr 11.42 proceedings.... The holding in *Ivey* simply provides the movant with legal assistance in preparing and presenting grievances."); *Beecham v. Commonwealth*, Ky., 657 S.W.2d 234, 236 (1983) ("The trial court is required to appoint counsel only upon request."); *Allen v. Commonwealth*, Ky. App., 668 S.W.2d 556, 557 (1984) ("The *Ivey* case does require that counsel be appointed, when requested, to assist an appellant in the presentation of an RCR 11.42 motion to vacate judgment."). *See also Ray v. Commonwealth*, Ky.App., 633 S.W.2d 71, 72 (recognizing the "statutory right to counsel which is set forth in KRS 31.110(1)," but declining to extend that right to CR 60.02 motions filed after the expiration of a sentence).

6. *Commonwealth v. Stamps*, Ky., 672 S.W.2d 336, 339 (1984) (correctly characterizing the *Ivey* holding when stating "the statute is broader [than RCR 11.42(5)]. It provides for appointment of counsel on all RCR 11.42 motions where the movant so requests," and finding the trial court's failure to appoint counsel erroneous, but harmless).

7. *Id.* ("Thus, we are squarely confronted with whether our decision in *Commonwealth v. Ivey* mandates automatic reversal in every case where a defendant proceeding in forma pauperis has filed an RCR 11.42 proceeding and requested the appointment of counsel, but the trial court has failed to provide one." (citation omitted)).

8. *Id.* ("We hold that *in the circumstances of this case,* the trial court's failure to appoint counsel for the RCr 11.42 motion was harmless *error.*" (emphasis added)).

(a) *To be represented by an attorney to the same extent as a person having his own counsel is so entitled;* and

(b) To be provided with the necessary services and facilities of representation including investigation and other preparation. The courts in which the defendant is tried shall waive all costs.

(2) *A needy person who is entitled to be represented by an attorney under subsection (1) is entitled:*

. . .

(c) *To be represented in any other post-conviction proceeding that the attorney and the needy person consider[ ] appropriate. However, if the counsel appointed in such post-conviction remedy,* with the court involved, determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense, there shall be no further right to be represented by counsel under the provisions of this chapter.[9]

I find KRS 31.110 susceptible to only one interpretation—the General Assembly intends to provide for the appointment of counsel in post-conviction proceedings—and today's majority does not provide a

viable alternative interpretation. Contrary to the majority's view that KRS 31.110(2)(c) authorizes the Department of Public Advocacy to provide counsel in post-conviction proceedings, but does not contemplate that trial courts will appoint such counsel, KRS Chapter 31 explicitly references court appointment.[10] And, of course, KRS 31.110(2)(c) itself contemplates "counsel *appointed* in such post-conviction remedy." [11]

The majority dismisses KRS 31.110's creation of a statutory right to appointed counsel in post-conviction proceedings on the basis of two (2) conclusions: (1) most of those pleadings are frivolous to begin with; and (2) the General Assembly has no authority to create such an entitlement.

At the outset, I fail to see how the first of these conclusions is at all germane to the inquiry of *whether* the General Assembly has provided a right to appointed counsel broader than that required by the state or federal constitutions or by RCr 11.42 itself. Although the majority purports to trumpet the "wisdom" of its holding by noting the "number of frivolous or facially meritless motions filed under the rule" [12] and suggesting that the statistics it cites demonstrate the "sheer volume and relative futility of RCr 11.42 motions," [13] an ·empirical lack of success simply does not justify this Court's substitution of its judg-

---

9. KRS 31.110 (emphasis added).

10. *See* KRS 31.051(2) ("Any person provided counsel under the provisions of this chapter shall be assessed *at the time of appointment,* a non-refundable fifty dollar ($50) administrative fee ...." (emphasis added)); KRS 31.120(1) ("The determination of whether a person covered by KRS 31.110 is a needy person shall be deferred no later than his first appearance *in court* ... [t]hereafter, *the court concerned* shall determine ... whether he is a needy person. However, nothing herein shall prevent *appointment of counsel* at the earliest necessary proceeding in which the person is entitled to counsel." (emphasis added)); KRS

31 .120(2) ("In determining whether a person is a needy person ... *the court concerned* shall consider such factors as ....."); KRS 31.125(1) ("If *court-appointed counsel* has been provided to a juvenile ....." (emphasis added)); KRS 31.250(1) ("Except for attorneys *appointed* pursuant to KRS ... 31.120 ....." (emphasis added)).

11. KRS 31.110(2)(c) (emphasis added).

12. *Majority Opinion* at 59 S.W.3d 448, 453 (2001).

13. *Id.* at 453.

ment for that of the General Assembly. I believe the appointment of counsel is warranted if it only helps a handful of people.

Even if the majority is correct that litigants infrequently obtain relief under RCr 11.42, I believe that fact merely demonstrates the need for the assistance of counsel in evaluation, preparation, and presentation of those claims. Although the majority's characterization implies the filing of intentionally meritless claims, the authority cited by the majority demonstrates to me that laypersons, untrained in the law, and struggling to do the best they can with forms passed on from inmate to inmate might, not unsurprisingly, produce inadequate pleadings. In my opinion, the appointment of counsel to assist laypersons, especially in light of the *Anders*-type procedure contemplated in the last sentence of KRS 31.110(2)(c), can only improve the quality of RCr 11.42 argumentation and reduce frivolous claims.

I also note that more recent data calls into question "the perception that there are an endless number of motions to vacate being recklessly filed across the Commonwealth."[14] And, in any event, the law review article containing the figures the majority cites addresses only *appellate court determinations* reviewing trial court rulings in RCr 11.42 proceedings,[15] and

ignores cases where trial courts granted relief and the Commonwealth chose not to appeal. Unlike the majority, which commits a hasty generalization by equating the empirical lack of appellate success with wholesale futility of post-conviction remedies, the author cited merely concludes that "[t]he burden on the Kentucky Court of Appeals, which must hear all RCr 11.42 appeals except those in death penalty cases, appears quite out of proportion to the relief granted."[16] The author relies upon these statistics to support his recommendation that Kentucky modify its rules to limit direct appeal from trial court rulings denying relief in non-death penalty RCr 11.42 proceedings.[17] The majority's appropriation of these statistics to demonstrate the "wisdom" of its decision to disregard KRS 31.110(2)(c) ignores the fact that the author who compiled these statistics does not recommend any changes in existing procedures for appointment of counsel in post-conviction matters, and, in fact, appears to recognize the utility of appointed counsel in such proceedings.[18]

I find myself even more vexed, however, with the majority's conclusion that the General Assembly's adoption of KRS 31.110 violated the separation of powers doctrine by attempting to establish court procedures for the appointment of counsel.

14. Monahan & DiLoreto, *supra* note 3 at 37.

15. The author even concludes that "[a]pparently, based on this survey, most of RCR 11.42 cases are correctly resolved at the trial court level." John S. Gillig, *Kentucky Post-Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42*, 83 Ky. L.J. 265, 344 (1994–95).

16. *Id.*

17. *Id.* at 387–390.

18. *See Id.* at 273 ("[M]ost states either require the appointment of counsel to assist the indigent prisoner in the investigation and presen-

tation of the claims or at least have in place a strong presumption in favor of such appointments."); *Id.* at 294 ("[A]s the scope of federal habeus corpus review further contracts, the necessity for *comprehensive* post-conviction review in Kentucky theoretically increases proportionally." (emphasis added)); *Id.* at 362 ("In appropriate cases, counsel should be appointed early in the process, because RCR 11.42(3) requires the movant to present all grounds for relief of which the prisoner has knowledge."); *Id.* ("If counsel is appointed, the original motion to vacate is either substituted or supplemented by pleadings prepared with the assistance of counsel.").

The legislative branch unquestionably has the authority to create a statutory right to appointed counsel. The United States Supreme Court says so,[19] and—until today, anyway—this Court has interpreted KRS Chapter 31 to create such a right,[20] and has, in the exercise of its constitutional authority, adopted procedures for the appointment of counsel in accordance with KRS Chapter 31.[21] In fact, this Court's predecessor all but begged the legislature to create a statewide public defender system,[22] specifically asked the General Assembly for guidance as to how such a system should be administered,[23]

**19.** *Nichols v. United States*, 511 U.S. 738, 748 n. 12, 114 S.Ct. 1921, 128 L.Ed.2d 745, 755 n. 12 (1994):

> Of course States may decide, based on their own constitutions or public policy, that counsel should be available for all indigent defendants charged with misdemeanors. Indeed, many, if not a majority, of States guarantee the right to counsel whenever imprisonment is authorized by statute, rather than actually imposed.

*Id.* (citing illustrative *statutory* provisions from the states of Alaska, California, and New Hampshire.).

**20.** *See Commonwealth v. Ivey, supra* note 1 at 457 ("The legislature could and did provide for a more generous policy of appointing counsel for indigents, an action which is *entirely consistent* with its control of the purse strings of the Commonwealth." (emphasis added)); *Commonwealth v. Stamps, supra* note 6 at 339 ("Such right to counsel for a needy person as exists in an RCR 11.42 proceeding is provided by rule *and by statute.*" (emphasis added)). *See also Lewis v. Lewis*, Ky., 875 S.W.2d 862 (1993) (finding a right to counsel in civil contempt proceedings premised exclusively on the basis of Kentucky statutory law: "[W]e hold that *the statutes of the Commonwealth require that an indigent person has a right to appointed counsel* in civil contempt proceedings prior to the execution of an order of incarceration." *Id.* at 864 (emphasis added)). KRS Chapter 31 itself, of course, refers to "any *right* provided by this chapter" in a provision allowing waiver of counsel. KRS 31.140(1) (emphasis added).

**21.** *See* RCr 3.05(2) ("If the defendant demonstrates that he or she is a needy person *as defined in KRS 1.120* and the court so concludes, then the appointment shall continue for all future stages of the criminal proceeding." (emphasis added)).

**22.** *See Warner v. Commonwealth*, Ky., 400 S.W.2d 209, 211–212 (1966) ("We think it is appropriate for the time to defer to legislative action."); *Jones v. Commonwealth*, Ky., 411 S.W.2d 37, 38 (1967) ("[W]e note that the General Assembly has not had an opportunity since publication of the opinion in Warner to act upon the problem; and until then we shall continue to be disposed to defer to legislative action."); *Commonwealth, Dept. of Corrections v. Burke*, Ky., 426 S.W.2d 449, 450 (1968):

> Appellee insists this vital matter of compensation involves the "administration of justice" and urges us to devise some system for the allowance of reasonable attorneys' fees as necessary costs of administering the criminal laws of this Commonwealth. A present insurmountable obstacle is that no system we could devise would be workable since the judiciary has no funds available for this purpose. Although appellee argues to the contrary, we believe this subject is, and should be, a legislative matter. Only the legislature can provide sufficient funds to finance such a project, and of course the legislature must necessarily create the system under which these funds could be properly disbursed.
>
> This very serious problem has been before us recently in *Warner v. Commonwealth* and *Jones v. Commonwealth*. In both cases, we expressed our intention to defer to legislative action. It is almost a matter of necessity that we do so.
>
> ... We cannot refrain from expressing the wish that other departments of government recognize this grave problem and take appropriate steps, as has been done in other states, to rectify the situation.

*Id.* (citations omitted); *Jones v. Commonwealth*, Ky., 457 S.W.2d 627 (1970) ("Hopeful that ... acceptable solutions to the problem may be forthcoming, we shall continue for the present to defer any judicial action.").

**23.** *See Commonwealth, Dept. of Corrections v. Burke, supra* note 22 at 450 ("But in the absence of some law ... there is simply noth-

and, when the General Assembly finally adopted KRS Chapter 31, celebrated it as a proper exercise of the legislative authority:

> No better statement of the basic concept of the doctrine of separation of powers can be made that that contained in No. 78 of the Federalist Papers. Here, Hamilton states:
>
> > "Whoever attentively considers the different departments of power must perceive that, in a government in which they are separated from each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them. The executive not only dispenses the honors but *holds the sword of the community.* The legislature *not only commands the purse but prescribes the rules by which the duties and rights of every citizen are to be regulated.* The judiciary, on the contrary, has no influence over *either the sword or the purse;* no direction either of the strength or of the wealth of the society, and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments." (emphasis supplied).
>
> In the context presented, we are persuaded that it is the duty of the execu-

tive department to enforce the criminal laws, and it is the duty of the legislative department to appropriate sufficient funds *to enforce the laws which they have enacted.* The proper duty of the judiciary, in the constitutionally ideal sense, is neither to enforce laws nor appropriate money. The judiciary's reason for existence is to *adjudicate.*

With these principles considered, we now declare: First, the system of court-appointed uncompensated counsel does not meet the constitutional standards of either the Constitution of the United States or the Constitution of this State.

Second, the Kentucky Public Defender Act of 1972 appears to provide means adequate to observe the required standards, if that act is properly construed, administered, and promptly put into operation.[24]

KRS 31.110 in no way infringes upon the judicial branch's authority to "prescribe ... rules of practice and procedure for the Court of Justice,"[25] but rather creates a statutory right to appointed counsel which allows indigent prisoners the equal protection of the laws. The Court of Justice is, by necessity, a part—indeed a vital part—of the administration of Kentucky's established system for providing legal representation to indigent persons. In so doing, we do not abdicate any constitutional powers conferred upon the judiciary, but rather we fulfill our duty as a separate branch of government. The majority's contrary conclusion is *impossible to reconcile with* this Court's explicit declaration, in *Pillersdorf*

---

ing to guide us with respect to the manner in which this appropriation could be properly expended."); *Jones v. Commonwealth* (1970), *supra* note 22 at 632 ("A difficulty with a judicial direction for payment would be in the lack of any standards or guide for determining reasonableness of compensation and of any system for payment.").

**24.** *Bradshaw v. Ball*, Ky., 487 S.W.2d 294, 299 (1972) (citation omitted and underlined emphasis added).

**25.** KENTUCKY CONSTITUTION § 116.

*v. Dept. of Public Advocacy,*[26] that the operation of the KRS Chapter 31 statutory framework does not implicate the judicial authority:

> *This is not a separation of powers case because ... no ultimate power of the judiciary (or any other branch of government) is in question ....* This case is about the relevant provisions of the Kentucky Public Defender Act, KRS Chapter 31, and how to operate *within* its statutory framework.
>
> KRS Chapter 31 is a comprehensive network of statutes enacted by the legislature in response to the dilemma created by both state and federal constitutional guarantees of effective representation for indigent defendants. The choice was clear: the state either must see that a defendant is provided counsel or it cannot proceed with a prosecution.
>
> In *Bradshaw v. Ball,* this Court considered the question of whether the Commonwealth was required to compensate court-appointed attorneys representing indigent defendants ....
>
> Of equal consequence for the present case, the Court also addressed the separation of powers concern of where, in government, the practical task of providing effective counsel lies ....
>
> In 1972, the year of the *Bradshaw* decision, the General Assembly enacted the Kentucky Public Defender Act, KRS Chapter 31. In both sources of law, *the allocation of responsibilities connected with the appointment of counsel for in-*

*digent defendants and the setting of fees are consistent with the separation of powers concept long ago expressed by Alexander Hamilton,* and now embedded in our system of jurisprudence.[27]

No doubt the General Assembly's collective head will spin as it attempts to comprehend how this Court can tacitly accept direct intrusion upon the judicial power,[28] but then dismiss three (3) decades of jurisprudence and manufacture a separation of powers controversy to justify "protecting our turf" in the realm of appointment of counsel.

In *Ivey,* this Court properly found that KRS 31.110 creates a statutory right to appointment of counsel for needy persons in post-conviction proceedings. Today's majority takes a giant leap *backwards* for no coherent reason. Because the prevailing view holds merely that trial courts are not *required* to appoint counsel unless the merits of the original RCr 11.42 petition require an evidentiary hearing, I would encourage the trial courts of this state to continue to make such appointments when requested for the purpose of supplementing RCr 11.42 petitions. I find it disconcerting that a majority of this Court does not recognize the importance of appointing counsel in post-conviction matters for needy persons who cannot afford to retain their own counsel. The General Assembly recognized the need for an equal playing field when it adopted KRS Chapter 31. Today's majority opinion derails the legislature's efforts and, unfortunately, restores the "inequity between the needy and affluent"[29] which, in *Ivey,* this Court found

---

26. Ky., 890 S.W.2d 616 (1994).

27. *Id.* at 618–619 (italicized emphasis in original, underlined emphasis added).

28. *See Commonwealth v. Reneer,* Ky., 734 S.W.2d 794 (1987) ("[W]e decline to hold

K.R.S. 532.055 unconstitutional, and we accept its provisions for the time being under the principles of comity." *Id.* at 798).

29. *Commonwealth v. Ivey, supra* note 1 at 458.

"cured by the statute." [30]

STUMBO, J., joins this opinion, concurring in part and dissenting in part.