**Randy WHITE, Billy Herrin and D. Ellis, Appellants**

v.

**Clifton BOARDS–BEY, Appellee.**

No. 2012–SC–000481–DG.

Supreme Court of Kentucky.

March 20, 2014.

Allison Rene Brown, Department of Corrections, Office of Legal Services, Counsel for Appellants.

Margaret Anne Ivie, Assistant Public Advocate, Department of Public Advocacy, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, Clifton Boards–Bey, is currently in the custody of the Kentucky Department of Corrections ("DOC"). While serving time at Northpoint Training Center ("NTC"), Boards–Bey was allegedly involved in a riot which ensued on August 21, 2009. Correctional Officer Stefany R. Thornberry investigated the riot. Officer Thornberry interviewed officers who, after witnessing the melee, could verify specific inmates who had violated the Kentucky Department of Corrections Policy and Procedures ("CPP") during the riot.

Correctional Lieutenant J. Phillips notified Officer Thornberry of an incident that occurred during the riot involving Boards–Bey. In particular, Lieutenant Phillips stated that, while the entire prison was on "lock-down status," Boards–Bey was outside of Dorm 1 with a group of inmates, yelling and throwing objects at NTC em-

ployees. Lieutenant Phillips also stated that Boards–Bey chased him from Dorm 1 to the prison kitchen. Based entirely on Lieutenant Phillips' interview, Officer Thornberry completed a disciplinary "write-up" of Boards–Bey.

Subsequently, Boards–Bey was transferred to the Green River Correctional Complex ("GRCC"). Sergeant Darime Ellis took over Officer Thornberry's investigation and interviewed Boards–Bey. During the interview, Boards–Bey maintained his innocence and stated that Lieutenant Phillips had fabricated the entire incident. Additionally, Boards–Bey requested that three witnesses be questioned. He claimed that these three witnesses would corroborate his version of events. The first two witnesses were NTC inmates and were present with Boards–Bey when the riot occurred. Boards–Bey also listed Lieutenant Phillips as a witness, claiming that he would recant his former statements and testify that Boards–Bey was innocent. Sergeant Ellis, however, failed to interview the three witnesses. Ultimately, Sergeant Ellis submitted a disciplinary report against Boards–Bey for violating Kentucky Department of Corrections Policies and Procedures (CPP) 15.2, Category VII, Item 4, "Physical Action Resulting in the Death or Injury of an Employee or Non–Inmate."

On October 25, 2009, Boards–Bey received notice of the charges. On October 28, 2009, a disciplinary hearing was conducted by a single Adjustment Committee Officer ("ACO"), Lieutenant Billy Herrin. Boards–Bey was represented by inmate "Legal Aide/Staff Counsel." During the hearing, Boards–Bey failed to call any witnesses or present evidence. The Hearing Disciplinary Report Form summarizes the hearing as follows:

Witnesses: Lt. Phillips, Inmate Anderson, Inmate Powell-waived by Inmate Boards in the hearing due to Inmate Boards stating that he did not want to talk in the hearing and he wanted an attorney.

Findings: Inmate Boards was present with Legal Aide Donald Violet. Inmate pled NOT GUILTY in the hearing. *Inmate Boards was read his* Miranda *Rights* [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] in the hearing and Inmate Boards stated that he did not want to speak to me. I find that Inmate Boards did commit the offense . . . based on the report from CTO Thornberry . . . that Inmate Boards was throwing items at NTC staff in front of dorm one and was chasing Lt. Phillips from dorm one to the kitchen. . . .

(Emphasis added.)

Boards–Bey was sentenced to 365 days of disciplinary segregation and loss of 199 days of non-restorable good time credit. He was also ordered to pay restitution for medical costs and any other costs resulting from this violation. Boards–Bey appealed the ACO's decision to the Warden of the GRCC, Randy White. In his appeal, Boards–Bey stated the following:

I wanted a real lawyer present. I was not aware that by me asking for a lawyer to be present he could go ahead and find me guilty. I thought that he had to wait intill [sic] my lawyer got there.

Boards–Bey's appeal also stated that, at the time of the riot, he was on crutches due to an ankle injury and therefore could not have physically chased Lieutenant Phillips. On November 25, 2009, Warden White amended the charge to a violation of CPP 15.2, Category VII, Item 1, "Physical Action Against an Employee or Non–Inmate." As a result, the Warden reduced Boards–Bey's sentence to 180 days of disciplinary segregation, but the loss of non-

restorable good time credits remained at 199 days.

On November 12, 2010, Boards–Bey filed a Petition for Declaration of Rights in the Muhlenberg Circuit Court pursuant to KRS 418.040. Boards–Bey named Warden White, Lieutenant Herrin, and Sergeant Ellis as defendants ("Appellants"). Boards–Bey's petition argued that Appellants violated his constitutional rights of due process as guaranteed by the Fourteenth Amendment to the United States Constitution, and his right to be free from arbitrary and capricious actions as guaranteed under Section Two of the Kentucky Constitution.

According to Boards–Bey, these constitutional infractions occurred on two occasions. The first violation occurred during Sergeant Ellis' investigation when he failed to interview and obtain statements from the three purported witnesses. The second alleged constitutional infringement occurred when Boards–Bey was denied the right to call witnesses and present evidence in his defense during his disciplinary hearing.

On March 21, 2011, Appellants filed a motion to dismiss Boards–Bey's petition for failure to state a claim upon which relief could be granted pursuant to CR 12.02(f). On April 1, 2011, the trial court granted Appellants' motion to dismiss, stating that the ACO complied with the minimal requirements of procedural due process as outlined in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The trial court also concluded that there was sufficient evidence in the record to support the ACO's decision. Boards–Bey appealed the trial court's dismissal.

The Court of Appeals, in a 2–1 decision, reversed the trial court's dismissal and remanded the case for appropriate proceedings. The Court of Appeals concluded that Boards–Bey was denied procedural due process when Sergeant Ellis failed to interview Boards–Bey's requested witnesses and when the ACO interpreted Boards–Bey's silence as a waiver to call witnesses during his disciplinary hearing. The Court of Appeals also believed that the ACO's finding of guilt and penalty was in retaliation for Boards–Bey's invocation of his right to remain silent. We granted discretionary review.

### *Jurisdiction*

As a threshold matter, Appellants argue that Boards–Bey failed to exhaust all administrative remedies before bringing forth his Petition for Declaration of Rights as required by KRS 454.415. Appellants failed to bring this argument before the trial court or the Court of Appeals. However, as Appellants correctly note, jurisdictional issues may be raised for the first time on appeal. *Commonwealth Health Corp. v. Croslin,* 920 S.W.2d 46, 47 (Ky.1996). Nonetheless, we can easily dispose of Appellants' first argument because Boards–Bey timely appealed the ACO's finding to Warden White. In his appeal, Boards–Bey complained that the ACO's finding of guilt was determined without sufficient evidence, including a lack of interviews from individuals who witnessed the alleged infraction. While Boards–Bey's appeal to Warden White failed to include terms such as "due process" or "*Wolff* requirements," his appeal was clearly grounded on due process violations.

### *Due Process*

The right to due process has two categorical distinctions: procedural due process and substantive due process. *McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 130 S.Ct. 3020, 3090–92, 177 L.Ed.2d 894 (2010). The former ensures fair process when protected rights are abridged,

while the latter provides protection against governmental interference with certain fundamental rights that are encompassed in the terms life, liberty, and property. *Id.* Since Boards–Bey's punishment for the alleged violations resulted in the loss of 199 non-restorable good time credits, a protected liberty interest has been implicated. *See Wolff,* 418 U.S. at 557, 94 S.Ct. 2963. Thus, we must determine if Boards–Bey received the minimum requirements of procedural due process.

■ At its most basic level, procedural due process ensures that one is not unfairly deprived of his life, liberty, or property without receiving a hearing, adequate notice, and a neutral adjudicator. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The appropriate amount of due process to which one is entitled is an inquiry that is often times difficult to evaluate, and it is even more convoluted when the person asserting the protected interest is lawfully incarcerated. Fortunately, the U.S. Supreme Court has provided us with the following guidance:

> Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

*Wolff,* 418 U.S. at 556, 94 S.Ct. 2963 (internal citations omitted).

Based on these "mutual accommodations," the U.S. Supreme Court concluded that the three following events must take place before a prisoner is deprived of a protected liberty interest: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (citing *Wolff,* 418 U.S. at 563–67, 94 S.Ct. 2963). Both instances of Boards–Bey's alleged due process infringements fall within the second *Wolff* requirement. Consequently, we will focus on whether Boards–Bey was afforded an opportunity to call witnesses and present documentary evidence in his own defense.

### Sergeant Ellis' Failure to Interview Witnesses

First, we will address the Court of Appeals' holding that Boards–Bey was denied the second *Wolff-due* process requirement when Sergeant Ellis failed to interview and obtain witness statements from Inmate Powell, Inmate Anderson, and Lieutenant Phillips. In order to give our analysis context, we feel it necessary to quote the Court of Appeals' exact finding with respect to this issue. The Court of Appeals stated the following:

> [Boards–Bey] was denied the second [*Wolff*] standard: his right to an opportunity to "call witnesses and present documentary evidence in his defense." The desire of Boards–Bey not to speak during his disciplinary hearing in no way implied a waiver of his right to have his witnesses properly investigated according to the procedures mandatorily set forth in [CPP] 15.6(C)(4)(B)(2)(c) as follows: "During the course of the Investigation review, the Investigator *SHALL interview witnesses,* unless a witness is

clearly irrelevant to the issues presented and *record a brief statement of what the witnesses report.*" Nor did the silence of Boards–Bey abrogate the *duty* of Sergeant Ellis to investigate personally and to record the results of his investigation.

(Emphasis in original.)

■ The above-quoted language indicates that the Court of Appeals believes Boards–Bey's due process rights were violated when Sergeant Ellis failed to comply with CPP 15.6(C)(4)(B)(2)(c). This specific CPP required Sergeant Ellis to interview the relevant witnesses and record a brief statement. Since Sergeant Ellis did not interview Boards–Bey's requested witnesses, we agree that Sergeant Ellis' investigation was non-compliant with the mandates of CPP 15.6(C)(4)(B)(2)(c). However, for the reasons set forth below, we cannot conclude that such a violation rises to the level of a denial of procedural due process.

■ Prison regulations, even those which include mandatory language such as "shall," do not automatically confer on the prisoner an added procedural due process protection. This Court refuses to render a prison official's failure to comply with the DOC's own regulations as *a per se* denial of procedural due process. To do so would be to expand the protections outlined in *Wolff* to include the extensive procedural requirements set forth in the CPP and other countless prison regulations and policies, a deviation from which would render that divergence a violation of a prisoner's due process rights.

To reinforce our conclusion, we point out an analogous Sixth Circuit case, *Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980). Similar to Boards–Bey, the prisoner in *Bills* argued that a Tennessee prison guideline added additional procedural due process protections. *Id.* at 1297–98. The

Tennessee guideline at issue stated that, during the disciplinary hearing, prisoners had the right to call and cross-examine relevant witnesses, including the employee who charged the prisoner with the infraction. *Id.* The Sixth Circuit stated that "it is clear that as a general rule the determination regarding what process is due is made according to the balancing test used in [*Wolff*] ... and not according to state procedural rules." *Id.* at 1298 (citing *Mathews v. Eldridge,* 424 U.S. 319, 332–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Smith v. Organization of Foster Families,* 431 U.S. 816, 847–49, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977)); *see also Black v. Parke,* 4 F.3d 442, 448 (6th Cir.1993) ("There is no constitutional violation when state actors fail to meet their own regulations, so long as the minimum constitutional requirements have been met.") (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

■ Having now concluded that Sergeant Ellis' failure to comply with CPP 15.6(C)(4)(B)(2)(c) does not, in and of itself, constitute a procedural due process violation, we must still determine whether Sergeant Ellis' failure to interview the requested witnesses deprived Boards–Bey of the second *Wolff* requirement. In evaluating this issue, we must keep in mind that the requirements imposed by the Due Process Clause are flexible and vary depending upon the particular situation. *E.g., Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

Undoubtedly, Boards–Bey was well aware of the basic subject matter of the witnesses' anticipated testimony. In Sergeant Ellis' report, for example, he stated that Boards–Bey believed the two requested inmate witnesses "would say that [Boards–Bey] was with [them] and that he

did not chase Lt. Phillips." In regards to Lieutenant Phillips, Boards–Bey believed he would recant his earlier statement and "tell the truth that inmate Boards did not chase him." As a result, we do not believe Sergeant Ellis' failure to travel to another correctional institution to interview these three witnesses stifled Boards–Bey's opportunity to call them as witnesses and present evidence in his own defense. Furthermore, we find nothing in the record to indicate that these witnesses were not available to testify at the disciplinary hearing. Nor does the record speak to whether calling the witnesses would be inconsistent with institutional safety and correctional goals. It appears that Boards–Bey was welcomed to present evidence in his defense prior to asserting his right to remain silent.

In summary of this issue, we find that while the DOC's internal regulation, GPP 15.6(C)(4)(B)(2)(c), required Sergeant Ellis to interview the requested witnesses and record such findings, his failure to follow the state-created procedure did not preclude Boards–Bey from receiving the minimum requirements of procedural due process as outlined in *Wolff.*

### Boards–Bey's Right to Call Witnesses and Present a Defense

We next address the Court of Appeals' holding that the ACQ failed to provide Boards–Bey with the second *Wolff* requirement during his disciplinary hearing. More specifically, the Court of Appeals concluded that the ACO foreclosed Boards–Bey from having the opportunity to call witnesses and present documentary evidence in his own defense. This Court has no record of the hearing either by transcript or recording. As a result, we must rely solely on the ACO's Hearing Disciplinary Report Form and Boards–Bey's personal account of the hearing,

which he described in his appeal to Warden White.

As the ACO stated in his findings, he advised Boards–Bey of his *"Miranda* rights" at the commencement of the hearing. Boards–Bey then invoked his *Miranda* rights and refused to speak. Accordingly, Boards–Bey presented no evidence or witnesses in his own defense. Boards–Bey clearly believed he could remain silent until a licensed attorney appeared on his behalf and, if an attorney failed to appear, the ACO would delay his ruling. In addition, Boards–Bey likely assumed that once his attorney appeared, he would call and question witnesses. The ACO, however, ignored Boards–Bey's invocation, continued the hearing, and made a finding of guilt.

Both parties and the Court of Appeals frame this issue as whether invoking one's right to remain silent implicitly waives the right to call witnesses during a disciplinary hearing. We disagree with this approach. Instead, we will focus on the ACO's recitation of rights and the effect the purported rights had on Boards–Bey's decision to refrain from speaking and participating in the hearing.

Unequivocally, the ACO erred in informing Boards–Bey that he enjoyed the broad-sweeping rights espoused in *Miranda.* Prisoners do not have the right to either retained or appointed counsel in disciplinary actions. *Baxter v. Palmigiano,* 425 U.S. 308, 315, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Moreover, while prisoners can assert their right to remain silent and not incriminate themselves, CPP § 15.6(e) states that such silence may be used against the prisoner during the hearing. *See also Webb v. Sharp,* 223 S.W.3d 113, 118 (Ky.2007) ("[S]ilence, or the failure to assert a claim of innocence, can be considered for purposes of prison disciplinary hearings.").

Boards–Bey, to his detriment, believed that he had the right to remain silent and the right to an attorney. We can only assume that Boards–Bey would have proceeded differently had he been correctly informed that he had no right to counsel, that his silence could be held against him, and that the ACO would adjudicate the matter with or without a presentation of his defense. Therefore, mistaken as the ACO was, Boards–Bey was nevertheless entitled to rely on the rights given. In other words, the state must stand by its word.

[redacted] We are mindful that the vast majority of ACOs, if not all, are aware that during disciplinary proceedings prisoners do not enjoy the rights provided for in *Miranda.* We also note that an ACO may recite accurate rights to a prisoner, yet unintentionally refer to those protections as *Miranda* rights. In fact, this may have very well occurred in the case before us, but we have no recording of the hearing. In an effort to prevent this situation from occurring in future disciplinary hearings, we caution ACOs to be specific when describing to a prisoner his or her rights and to discontinue using the term "*Miranda* rights."

This Court is of the opinion that Boards–Bey is deserving of a new disciplinary hearing, during which we recommend that the ACO advise Boards–Bey of his rights in accordance with the dictates of *Wolff* and its progeny, and not *Miranda.*

***Some Evidence***

[redacted] This Court anticipates that the same or similar evidence will once again be presented to the ACO upon rehearing. Therefore, we will address the issue of whether there was "some evidence" in the record to support the ACO's finding of guilt. The "some evidence" standard simply requires some basis in the record in which the reviewing court can deduce the reasons for the disciplinary board's finding. *See Walpole,* 472 U.S. at 457, 105 S.Ct. 2768. The ACO's ruling was based on Officer Thornberry's report, the contents of which stated that Lieutenant Phillips had personally witnessed Boards–Bey commit the alleged infraction. Thus, there was some evidence in the limited record to pass constitutional muster.

***Conclusion***

To conclude, Sergeant Ellis' failure to interview Boards–Bey's requested witnesses did not prevent Boards–Bey from receiving the minimum requirements of procedural due process as outlined in *Wolff.* Furthermore, this Court will not penalize Boards–Bey for asserting rights to which he was not legally entitled, since he was merely relying on the erroneous assurances of the ACO. Therefore, we affirm the decision of the Court of Appeals, albeit for different reasons, vacating the holding of the Muhlenberg Circuit Court and remanding this case to the Adjustment Committee with instructions for it to conduct a new disciplinary hearing.

All sitting. All concur.