RENDERED:  JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0889-MR

GEORGE SLAUGHTER  APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE MITCHELL PERRY, JUDGE<br>ACTION NO. 16-CR-000409 | |

COMMONWEALTH OF KENTUCKY  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  This case is before us following a remand for an evidentiary

hearing on a claim of ineffective assistance of counsel.  The Trial Court conducted

a hearing and entered an order denying the motion of Appellant, George Slaughter,

pursuant to RCr [1]11.42.  Finding no error, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

# BACKGROUND

On February 13, 2016, Slaughter, who was a convicted felon with a prior manslaughter conviction, used a gun to murder three people. Slaughter was subsequently indicted by a Jefferson County Grand Jury on three counts of murder, one count of being a convicted felon in possession of a handgun, and one count of tampering with physical evidence. There was one "living victim" from the murders who interacted with Slaughter at some point during or after the commission of the crimes. According to one of Slaughter's trial counsel, this "living victim" was the only witness to what happened, and the victim's statements regarding Slaughter were not consistent with any mental health defense Slaughter might attempt. Slaughter ultimately pleaded guilty; thus, the facts underlying these crimes are not fully developed in the record.

Slaughter later, representing himself *pro se*, filed for post-conviction relief pursuant to RCr 11.42, claiming both of his trial counsel rendered ineffective assistance by neither informing him of a possible insanity defense nor properly investigating and pursuing the same. The Trial Court denied the RCr 11.42 motion without a hearing. On appeal, a panel of this Court reversed and remanded for an evidentiary hearing:

Appellant,[2] through counsel, argues that his trial counsel was ineffective when she advised him to plead guilty without explaining any defenses available to him and telling him he would receive the death penalty if the matter proceeded to trial. He asserts that trial counsel did not investigate, prepare, or explain to him his best and only defense – that of insanity. Appellant directs our attention to KCPC[3]'s competency evaluation, which indicates that Appellant was treated at the University of Louisville Hospital where he was diagnosed with paranoid schizophrenia. He was also treated at Our Lady of Peace Hospital, where he was diagnosed with substance-induced psychotic disorder, cocaine dependency, and cocaine-induced psychosis. Citing KRS[4] 504.020(1), Appellant argues that he was not responsible for his criminal offenses because it is likely that at the time of those offenses, he was mentally ill and was incapable of appreciating the criminality of his conduct or conforming his conduct to the requirements of the law.

Appellant claims that his trial counsel never informed him that an insanity defense was possible. He maintains that had counsel explained the insanity defense, he would not have accepted the plea and would have insisted on going to trial. He also contends that he was instructed to accept the plea because his failure to do so would have resulted in the death penalty. Appellant argues that trial counsel did not give him a voluntary and intelligent choice of whether to plead guilty or go to trial. The focus of his argument on this issue is that by not adequately advising him of the insanity defense, trial counsel provided deficient performance and rendered his guilty plea unknowing. . . .

---

[2] Slaughter was referred to as "Appellant" in the prior appeal.

[3] Kentucky Correctional Psychiatric Center.

[4] Kentucky Revised Statutes.

-3-

. . .

     Appellant presented evidence in the form of his KCPC evaluation that he suffers from a variety of psychiatric issues.  The KCPC evaluator determined that Appellant was competent to stand trial through a combination of psychiatric treatment and sobriety.  The fact that Appellant could be considered competent to stand trial through treatment and sobriety, however, does not mean that Appellant was sane at the time he allegedly committed the crimes at issue.  Given Appellant's significant mental health issues, a reasonable attorney would have at least investigated the possibility of an insanity defense and discussed it with Appellant before advising him to plead guilty and accept a sentence of life without parole for twenty-five years.

     Appellant claims that his attorney never discussed with him the possibility of an insanity defense.  It is impossible to determine from the record before us whether defense counsel considered an insanity defense and/or discussed such a defense with Appellant before advising him to plead guilty.  In *Commonwealth v. Rank*, 494 S.W.3d 476 (Ky. 2016), the Kentucky Supreme Court considered a similar claim in the context of counsel's alleged failure to investigate and discuss a possible extreme emotional disturbance ("EED") defense before advising his client to plead guilty.  The Court ultimately held that an evidentiary hearing was required to determine what counsel discussed with the defendant prior to advising him to accept the guilty plea and whether counsel's decision to forego an EED defense was made as part of an informed investigation and as part of solid trial strategy.  The Kentucky Supreme Court stated that

     Rank's motion raised a material question as to the reasonableness of [defense counsel's] investigation of the potential for an EED defense or, framed differently,

-4-

whether it was reasonable for [defense counsel] not to pursue an EED defense. *See Hodge v. Commonwealth*, 68 S.W.3d 338 (Ky. 2001) (an evidentiary hearing is required to determine whether counsel's decision was "trial strategy or an abdication of advocacy"). [Defense counsel's] knowledge and understanding of the relevant facts relating to a potential EED defense are not evident on the face of the record. An evidentiary hearing on Rank's RCr 11.42 motion was required to ascertain those facts.

*Id.* at 485.

## **CONCLUSION**

The facts before us parallel those of *Rank*. As defense counsel's knowledge and understanding of the relevant facts relating to a potential insanity defense are not evident on the face of the record, an evidentiary hearing on Appellant's RCr 11.42 motion is required to ascertain those facts. Accordingly, we vacate the order of the Jefferson Circuit Court and remand the matter with instructions that the circuit court conduct an evidentiary hearing on Appellant's ineffective assistance of counsel claim.

*Slaughter v. Commonwealth*, 2020-CA-0259-MR, 2021 WL 1051589, at *2-3 (Ky. App. Mar. 19, 2021) (footnote omitted).

The Trial Court held the evidentiary hearing on remand. One of the issues Slaughter raises on appeal concerns a denial of procedural due process; thus, we take a moment to discuss the hearings leading up to the evidentiary hearing. At one status conference following remand, with the Commonwealth present,

-5-

Slaughter informed the Trial Court that he would soon be filing a request for funds to have himself evaluated. Slaughter's request was unclear, and the Trial Court questioned whether Slaughter was seeking to evaluate his present competency or his past competency. The Commonwealth agreed that Slaughter needed to be competent during this hearing and noted that KCPC could perform an evaluation if necessary. After multiple follow-up questions, the Trial Court ultimately requested that Slaughter's post-conviction counsel[5] put their request in writing. The Trial Court indicated that the Commonwealth could then respond to the "Chapter 504" request.[6] Slaughter then clarified that his request would be *ex parte* for his own expert to show what his defense counsel should have known and done. The Trial Court then asked Slaughter to explain how his request was a confidential request, at which point Slaughter stated he would be "happy" to file in the record his request for funds.

The Trial Court then stated it understood Slaughter's request was for a competency evaluation or possibly funds for a private expert. Either way, the Trial Court informed Slaughter that he could file his request, then the Commonwealth

---

[5] Slaughter always had two post-conviction counsel present at each status conference and the hearing. One of his post-conviction counsel withdrew after the first status conference and was replaced by another attorney from the Department of Public Advocacy.

[6] Presumably a KRS 504.100 request for the court to appoint a psychologist or psychiatrist to examine, treat, and report on a defendant's mental condition as it relates to competency.

-6-

could have time to respond.  Slaughter did not object to this ruling.  The parties then scheduled the evidentiary hearing.

Slaughter then filed what was titled an *ex parte* request for funds pursuant to KRS 31.185.  It was placed in the record, though it does not appear that it was filed under seal.  The motion was generically discussed at a subsequent and lengthy status conference where the Commonwealth was present.  The Commonwealth argued generally against the request.  The Commonwealth noted the remand directive was only to determine whether:  (1) counsel advised Slaughter to plead guilty without discussing possible defenses; (2) counsel told him he would receive the death penalty if he did not plead; and (3) counsel investigated, prepared, or explained to Slaughter an insanity defense.  The remand directive, the Commonwealth argued, could be resolved solely on the deficient performance prong of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The Commonwealth requested the Trial Court bifurcate the proceedings.  Slaughter objected, and the Trial Court bifurcated the proceedings and held the *ex parte* motion in abeyance unless and until proceedings regarding the prejudice prong of *Strickland* were necessary.

At the evidentiary hearing Slaughter called two witnesses:  himself; and Tracey Mudd (Mudd), one of his two defense counsel.  The Commonwealth,

surprised that Slaughter did not call both of his defense counsel, called Angela Elleman (Elleman), Slaughter's other defense counsel, to testify.

Slaughter admitted he visited frequently with both of his attorneys prior to entry of his guilty plea. He told his defense counsel about his beliefs in the Illuminati. He claimed his defense counsel told Slaughter they were afraid that if Slaughter went to trial, he would receive the death penalty. He did not recall his defense counsel talking to him about any defenses, and he denied that they discussed with him an insanity defense. He claimed he asked Mudd about an insanity defense due to his previous diagnosis of paranoid schizophrenia and, "I was told that in the state of Kentucky that that didn't matter and, uh, I would still probably receive the death penalty."

Slaughter's defense team was comprised of two experienced trial attorneys. Mudd was a seasoned criminal defense attorney with years of trial experience. She had moved to the Capital Trial Division at the Louisville Metro Public Defender's Office prior to representing Slaughter. She had since left criminal defense work and spent the past several years working at the Social Security Administration. Elleman was also a highly-experienced criminal defense attorney, who was the head of the Capital Trial Division at the Louisville Metro Public Defender's Office when she represented Slaughter. Elleman has worked

criminal defense on capital cases in multiple states, and, as of the hearing date, was working capital cases in Indiana.

Slaughter's defense team met with Slaughter at least once every two weeks throughout their representation. Their caseloads, which were almost exclusively capital cases, were very small, and they could devote substantial time and resources to the capital cases.

They had Slaughter evaluated by a mental health expert almost immediately after he was arrested. They consulted with two other mental health experts and employed them during Slaughter's competency proceedings. Elleman continually provided one of their experts additional information and spoke with him frequently about the case. She never obtained a supportive verbal opinion, though, so she never requested her expert draft a written opinion.

Mudd testified that she explained the defenses to Slaughter. She noted that Slaughter's concern regarded when he could get out of prison. She specifically recalled discussing the insanity defense and explaining to Slaughter that it was not necessarily a "get out of jail free card" because there was another procedure that could keep Slaughter institutionalized. The evidence of an insanity defense was also lacking, as Mudd explained, "we didn't, insanity was hard, we didn't have anybody who was saying that." The jail records, Mudd explained, showed malingering and included observations of Slaughter's behaviors when he

did not know anyone was watching. Additionally, none of the experts opined that Slaughter was insane at the time of the offense. And, Mudd noted, had they pursued an insanity defense, the Commonwealth not only would have been entitled to its own expert evaluation of Slaughter, but it could have put in front of the jury all of the jail records regarding Slaughter's suspected malingering behaviors. This negative evidence was substantial, according to Mudd, and would challenge Slaughter's credibility. "Once we've called into (sic) malingering, and, perhaps, induced psychosis through drugs, then the jury is done believing the legitimacy of the real claims."

Mudd explained that they discussed multiple defenses with Slaughter. They even discussed an alibi defense per Slaughter's request – even though there was a living victim who identified Slaughter as the perpetrator. Mudd denied ever telling Slaughter that he *would* receive the death penalty or any other penalty if he went to trial.

Ultimately, Slaughter stated he wanted an opportunity to get out of prison at some point. So, his counsel approached the Commonwealth with an offer – a guilty plea in exchange for a sentence of life without the possibility of parole for 25 years. The Commonwealth accepted the offer, and Slaughter entered a guilty plea pursuant to the same.

Following briefing, the Trial Court issued an order denying

Slaughter's RCr 11.42 motion, holding in relevant part:

> The Court heard testimony from [Slaughter], Ms.
> Elleman, and Ms. Mudd. The two sides present very
> different pictures of the course of litigation. [Slaughter]
> claimed that his attorneys rarely met with, never
> discussed the possibility of an insanity defense with him,
> and did not give him any discovery to review. The
> attorneys on the other hand, presented very detailed and
> thorough accounts of their actions throughout the case.
> They visited [Slaughter] frequently, knew that mental
> health would be a factor from the very beginning as
> evidenced by their petition for expert funding in District
> Court, and discussed a wide range of defense strategies
> and tactics with [Slaughter] over the many months of
> their involvement in the case. As both attorneys testified,
> they understood just how important mental health could
> be to this case which is why they proceeded to retain
> three mental health experts.
>
> In providing effective assistance, counsel has a duty to
> conduct a reasonable investigation, including defenses to
> the charges. *Wiggins v. Smith*, 539 U.S. 510, 521-523
> (2003). Counsel's investigation need only be reasonable
> under the totality of the circumstances. *Robbins v.
> Commonwealth*, 365 S.W.3d 211, 214 (Ky. App. 2014).
> The previous defense counsel here clearly went above
> and beyond what is required and conducted a thorough
> investigation into [Slaughter's] mental health and how
> that might factor into the case. Their decision not to
> pursue an insanity defense is the result of a strategic
> choice based on the lack of evidence to successfully
> support such a defense, and not because of any oversight,
> lack of effort, or deficiency on their part. This Court
> cannot say that the actions of the previous defense
> counsel fell below the prevailing professional norms or
> standards. They demonstrated clear knowledge of the
> possibility of an insanity defense and more than adequate

-11-

understanding that it likely would not have prevailed at trial. Therefore, their performance cannot be deficient under *Strickland*. With [Slaughter] unable to satisfy the first prong of the *Strickland* analysis, it is unnecessary to proceed to an examination of prejudice.

Opinion at 4.

### ANALYSIS

Slaughter timely appealed, raising four issues. Following the standard of review, we discuss Slaughter's claims *seriatim*.

Slaughter pleaded guilty. To obtain post-conviction relief pursuant to RCr 11.42 on the ground that his plea was invalid, Slaughter must demonstrate facts that would render the plea: (1) involuntary under the Fourteenth Amendment's Due Process Clause; (2) so tainted by counsel's ineffective assistance as to violate the Sixth Amendment; or (3) otherwise clearly invalid. *Stiger v. Commonwealth*, 381 S.W.3d 230, 234 (Ky. 2012) (citing *Fraser v. Commonwealth*, 59 S.W.3d 448 (Ky. 2001)). Slaughter claims ineffective assistance of counsel; thus, his claims fall into the second category.

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 1481-82, 176 L. Ed. 2d 284 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970), and *Strickland*, 466 U.S. at 686). Ineffective assistance of counsel may render a guilty

-12-

plea invalid if that assistance violates the Sixth Amendment of the United States Constitution. Ineffective assistance occurs when a defendant proves: (1) counsel's performance is deficient; and (2) that deficiency results in prejudice to the defendant. *Strickland*, 466 U.S. at 687.

Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Review of counsel's performance is under an objective standard of reasonably effective assistance. *Id*. All of the underlying circumstances must be considered when assessing whether counsel's assistance was reasonably effective. *Id.* at 688. Additionally, prevailing professional norms may guide the reasonableness inquiry. *Padilla*, 559 U.S. at 366-67. But guides are just that – guides – as any set of rules would "restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.

Our examination of counsel's performance requires a high amount of deference that avoids second guessing counsel's assistance. *Id*. In fact, our review "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*.

The second prong of the *Strickland* analysis requires a defendant to prove he or she was prejudiced by the deficient performance. "In the context of guilty pleas, the prejudice prong is satisfied when the defendant shows 'that there

is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Commonwealth v. Carneal*, 274 S.W.3d 420, 431 (Ky. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985)).

"We review the trial court's factual findings only for clear error, but its application of legal standards and precedents we review *de novo*." *Stiger*, 381 S.W.3d at 234 (citing *Brown v. Commonwealth*, 253 S.W.3d 490 (Ky. 2008)).

## I.    Were Slaughter's due process rights violated?

We now turn to Slaughter's first claim of error. Slaughter raises what he claims is a matter of first impression: whether his due process rights were violated when the Trial Court initially "bifurcated," or limited, its review of the *Strickland* claim solely to the deficient performance prong but then allegedly permitted the Commonwealth to ask some questions pertaining to the prejudice prong. This issue presents a pure question of law; thus, we review the Trial Court's ruling *de novo*.

Due process claims fall into two categories: procedural and substantive. *White v. Boards-Bey*, 426 S.W.3d 569, 573 (Ky. 2014) (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 860-65, 130 S. Ct. 3020, 3090-92, 177 L. Ed. 2d 894 (2010)). Substantive due process "provides protection against governmental interference with certain fundamental rights that are encompassed in

-14-

the terms life, liberty, and property." *Id.* at 574. When the government seeks to regulate a "fundamental" right "such as the right to free speech or to vote[,]" then substantive due process rights are implicated, and the "government must have an exceedingly important reason to regulate them, if at all[.]" *Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392, 397 (Ky. 2009).

In contrast to substantive due process protections for fundamental rights, procedural due process "ensures fair process when *protected* rights are abridged[.]" *White*, 426 S.W.3d at 573 (emphasis added). This protection "requires the government to follow known and established procedures, and not to act arbitrarily or unfairly in regulating life, liberty or property." *Miller*, 296 S.W.3d at 397.

Slaughter's case – a rule-based collateral attack on a criminal conviction – is based on a protected right, not a fundamental right. As our Supreme Court has held, "[t]here is no constitutional right to a post-conviction collateral attack on a criminal conviction or to be represented by counsel at such a proceeding where it exists." *Fraser v. Commonwealth*, 59 S.W.3d 448, 451 (2001) (citing *Murray v. Giarratano*, 492 U.S. 1, 8, 109 S. Ct. 2765, 2769, 106 L. Ed. 2d 1 (1989), and *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987)). The Kentucky Constitution only "provides for one appeal as a matter of right," *Fraser*, 59 S.W.3d at 451, and Slaughter's post-conviction

claim does not fall into this matter-of-right, direct appeal category. Even though Slaughter's ineffective assistance claim implicates the Constitution, the collateral attack itself is not a fundamental right. Thus, his due process claim is reviewed under the procedural due process framework.

"The fundamental requirement of procedural due process is simply that all affected parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 469 (Ky. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)). What rises to a violation of procedural due process proffers a challenging calculus as the "appropriate amount of due process to which one is entitled is an inquiry that is often times difficult to evaluate[.]" *White*, 426 S.W.3d at 574. At minimum, in administrative procedures procedural due process requires "notice, an opportunity for a hearing appropriate to the nature of the case, and the making of particularized findings of fact for the record." *Pangallo v. Kentucky Law Enforcement Council*, 106 S.W.3d 474, 477 (Ky. App. 2003) (citing *Cape Publications, Inc. v. Braden*, 39 S.W.3d 823, 827 (Ky. 2001)). These minimal procedural due process protections are not as all-encompassing as substantive due process protections:

> Not always does due process require a trial or the strict application of evidentiary rules and/or unlimited discovery. The court may construct, especially under special statutory proceedings, a more flexible procedure

> to account for the affected interest or potential deprivation. Procedural due process is not a static concept, but calls for such procedural protections as the particular situation may demand.

*Kentucky Cent. Life Ins. Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995) (citing

*Morrisey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

Here, Slaughter was afforded notice, an opportunity to be heard on the

defined remand issue, and an order making particularized findings of fact for the

record. In other words, Slaughter was afforded an entire panoply of procedural due

process rights, and any due process claim must fail.[7]

Slaughter further claims more generally that bifurcation of evidentiary

hearings in *Strickland* cases is inappropriate. He cites two cases. However, both

cases support the opposite conclusion. In *Illinois v. Jacobazzi*, 966 N.E.2d 1 (Ill.

App. 2009), a foreign appellate court found a bifurcation of the *Strickland* prongs

was a "reasonable application of our directions on remand," but nonetheless

erroneous because "the remand directions were insufficient even for their own

purposes." *Id*. at 21-22. In *Henry v. Florida*, 937 So.2d 563, 575 (Fla. 2004), the

Florida Supreme Court cautioned trial judges applying a criminal rule applicable to

---

[7] There are two important limitations on our holding. First, not all RCr 11.42 claimants are entitled to the amount of procedural due process Slaughter received. Indeed, not all RCr 11.42 claimants are even entitled to an evidentiary hearing. Second, our holding herein is limited to the facts before us and the specific remand directive placed on the Trial Court by a previous panel of this Court. Nothing in our holding should be interpreted as altering the general procedural framework for the disposition of RCr 11.42 motions.

-17-

death penalty cases "to be very careful when" holding bifurcated proceedings on *Strickland* prongs because they may not achieve the "ultimate goal of efficiency in postconviction proceedings[.]" Both cases implicitly if not explicitly permitted bifurcated proceedings, and neither case supports that bifurcated proceedings are *ipso facto* due process violations. Thus, *Jacobazzi* and *Henry* support the Trial Court's decision herein.

In sum, the Trial Court correctly interpreted our remand directive as requiring only an inquiry into the deficient performance prong of *Strickland*. Whether defense counsel informed Slaughter of an insanity defense and whether defense counsel conducted a reasonable investigation were not so intertwined with the prejudice inquiry to require a hearing on both prongs. Our review of the hearing and the remand directive shows that the Trial Court properly exercised its discretion and limited the hearing. Even the limited questions asked by the Commonwealth that facially broached the prejudice prong were relevant to the deficient performance inquiry and do not change the fact that Slaughter received a hearing and ruling on the deficient performance prong. Slaughter cannot even point to evidence that he wanted to present on deficient performance that he was prohibited from presenting.[8] And, more importantly, the Trial Court only ruled on

---

[8] Moreover, Slaughter's appellate claim is a bit of a moving target. He claims the Trial Court "first bifurcate[d] a hearing and then un-bifurcate[d] the same hearing so only one side c[ould]

-18-

the deficient performance prong, not the prejudice prong. Any evidence elicited regarding the latter is superfluous to the substantive claim on appeal. Accordingly, the Trial Court did not deny Slaughter his procedural due process rights.

## II. Deficient performance – alleged mis-advice about insanity defense.

Slaughter next argues that Mudd's performance was deficient because she purportedly mis-advised Slaughter that "an insanity defense was the same thing as guilty but mentally ill." Appellant's Brief at 16. The Commonwealth responds that Slaughter's factual recitation of Mudd's testimony is incomplete and taken out of context. Accordingly, the Commonwealth claims the Trial Court did not err by finding Mudd did not misadvise Slaughter about an insanity defense.

Slaughter is correct that Kentucky authorizes two distinct verdicts with disparate outcomes – guilty but mentally ill, and not guilty by reason of

---

present evidence of both deficiency and prejudice[.]" Reply Brief at 2 (alterations added). However, if the proceedings were "un-bifurcated" as Slaughter claims, then the bifurcation was not a denial of due process because Slaughter ultimately received an evidentiary hearing on both prongs as he requested. Any alleged unfairness is more properly an allegation of error with Slaughter's own post-conviction choices. Indeed, Slaughter insinuates error with the handling of his "*ex parte*" motion, but it was Slaughter who waived the *ex parte* nature of his request for funds by making it in front of the Commonwealth. And when the proceedings were purportedly "un-bifurcated", Slaughter should have pressed the Trial Court for rulings on the evidentiary issue that was being held in abeyance, namely his *ex parte* motion and the evidence he *potentially* could have obtained with Chapter 31 funds. Slaughter also could have requested a continuance to gather additional evidence or witnesses. His evidentiary choices ostensibly waive any appellate review of this claim. *Perkins v. Commonwealth*, 237 S.W.3d 215, 223 (Ky. App. 2007) (citing *Hayes v. Commonwealth*, 175 S.W.3d 574, 596 (Ky. 2005), *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002), *Dillard v. Commonwealth*, 995 S.W.3d 366, 371 (Ky. 1999), and *Bell v. Commonwealth*, 473 S.W.2d 820, 821 (Ky. 1971)) ("Our case law is well established that a failure to press a trial court for a ruling or an admonition on an objection or on a motion for relief operates as a waiver of that issue for purposes of appellate review.").

insanity at the time of the offense. KRS 504.120(3)-(4). The latter "functions as a complete defense to conviction." *Star v. Commonwealth*, 313 S.W.3d 30, 36 (Ky. 2010). The former "does not relieve an offender of criminal responsibility for his conduct." *Id.* The difference between the two verdicts is that the one who is guilty but mentally ill "is able to appreciate the wrongfulness of his behavior and is able to conform his conduct to the requirements of law[,]" while the one who is insane during the commission of the crime "lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." *Id.* (quoting KRS 504.020(1)).

Given the substantially different outcomes of each verdict, affirmative mis-advice regarding them *may* constitute deficient performance under *Strickland*. *Cf. Commonwealth v. Rank*, 494 S.W.3d 476, 483-84 (Ky. 2016) (alleged mis-advice about extreme emotional disturbance defense); *Commonwealth v. Pridham*, 394 S.W.3d 867 (Ky. 2012) (alleged mis-advice about parole eligibility under the violent offender statute); *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (mis-advice about deportation consequences of plea). However, we need not determine whether such mis-advice constitutes deficient performance because Slaughter's counsel did not mis-advise him about an insanity defense.

We have reviewed the evidentiary hearing; substantial evidence supports the Trial Court's finding that counsel investigated and understood an insanity defense and "discussed a wide range of defense strategies and tactics with" Slaughter. Both of his counsel testified that they discussed a possible insanity defense with Slaughter. Mudd told Slaughter that "worst-case scenario," he "could" spend the rest of his life institutionalized if the insanity defense worked, but she never told him he "<u>will</u> anything."[9] Mudd's testimony did not demonstrate that she confused a guilty but mentally ill verdict and a not guilty by reason of insanity verdict. It also did not show that she affirmatively misadvised Slaughter about the two verdicts. Accordingly, Slaughter failed to demonstrate deficient performance on this issue.

### III. Deficient performance – failure to pursue a fourth mental health expert.

Slaughter next argues that his trial counsel's performances were deficient by allegedly failing to investigate properly and retain a fourth mental health expert. We have reviewed the record and find no deficient performance occurred in counsel's investigation of Slaughter's insanity defense.

Under *Strickland*, *supra*, counsel has a duty to make a reasonable investigation. That "reasonable investigation is not an investigation that the best

---

[9] Kentucky permits involuntary hospitalizations for mental illness. KRS Chapter 202A.

criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct." *Haight v. Commonwealth*, 41 S.W.3d 436, 446 (Ky. 2001) (citation omitted), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Instead, the failure-to-adequately-investigate claim "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Counsel's investigation and judgments here were reasonable. At the beginning of their representation, they recognized mental health may be a defense and immediately had Slaughter evaluated by a mental health expert. They thoroughly investigated Slaughter's prior mental health evaluations and continually monitored Slaughter's mental health. They later retained two other mental health experts to assist with competency proceedings. Counsel also consulted with one of those experts, giving him additional information about Slaughter and never receiving a conclusion she believed would be helpful for an insanity defense. Accordingly, she never had the expert reduce his opinion to writing. Counsel thoroughly investigated the discovery materials, thoroughly investigated Slaughter's past and present mental health issues, and thoroughly kept apprised of Slaughter's actions at the jail (which included suspected malingering about mental health problems).

Counsel also sought and obtained a plea deal that aligned with Slaughter's ultimate desire – the opportunity to see the parole board. We are reminded here that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Indeed,

> Counsel's trial actions can reasonably be based on strategic choices made by the defendant and on information supplied by the defendant, and "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."

*Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (quoting *Strickland*, 466 U.S. at 691) (cleaned up). Furthermore, counsel's performance includes an "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Counsel repeatedly and frequently consulted with Slaughter, and, after multiple mental health evaluations, significant discovery, and discussions with counsel about potential defenses including an insanity defense, Slaughter's expressed desire was to obtain a plea that guaranteed he would see the parole board. Counsel's performance was not deficient for securing a plea bargain that

aligned with Slaughter's ultimate goal: a guaranteed opportunity to see the parole board.

In sum, Slaughter was represented by two highly experienced capital defense attorneys, one of whom was the head of the capital division, who employed three mental health experts, thoroughly reviewed the evidence, extensively met with and counseled Slaughter, and thoroughly investigated the possibility of an insanity defense. These actions at minimum constituted reasonable performance, and their actions likely constituted much more. As the *Strickland* Court warned, "Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." 466 U.S. at 697. Raising the defense bar higher would certainly cause what *Strickland* sought to prohibit with its reasonable performance standard.

Accordingly, we affirm the Trial Court's order finding counsel's performance not deficient on this point.

## IV. Entitlement to another evidentiary hearing.

Finally, Slaughter argues he is entitled to another evidentiary hearing to present "the factual basis for his *entire* ineffective assistance of counsel claim" regarding the alleged insanity defense. Appellant's Brief at 25. Because we find no error with the Trial Court's conclusion on the deficient performance prong,

-24-

Slaughter's *Strickland* claim necessarily fails, and he is not entitled to an evidentiary hearing on the remaining prong. *Cf. Haley v. Commonwealth*, 586 S.W.3d 744, 751 (Ky. App. 2019) ("Where the record is clear that an ineffective assistance of counsel claim would ultimately fail the prejudice prong of *Strickland*, regardless of the outcome of a hearing on the deficiency prong, the trial court should be affirmed even in the absence of such a hearing.") (citing *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014)).

## CONCLUSION

The Trial Court followed this Court's remand directive and held a hearing to determine whether Slaughter's counsel deficiently performed in their advice about and investigation into an insanity defense. The Trial Court held such a hearing and found no deficient performance. We have reviewed the same and find no error. Accordingly, we AFFIRM the order denying the RCr 11.42 motion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Andrea Reed<br>Frankfort, Kentucky | Daniel J. Cameron<br>Attorney General of Kentucky |
| | Matthew R. Krygiel<br>Assistant Attorney General<br>Frankfort, Kentucky |